Argued and submitted September 10, 2003, decision of the Court of Appeals affirmed; judgment of the circuit court reversed, and case remanded to the circuit court for further proceedings August 12, 2004

Murray L. BLACK;
Melrhea E. Black; Jack Boersma and Barbara J. Boersma
as Trustees for the Boersma Family Trust;
J.K. (Kelly) Hola; Jeannie Hola;
Albert F. Laurie and Marlene D. Laurie
as Trustees of the A. F. Laurie Trust;
Donald J. Meis and Nadine E. Meis,
as Trustees for the Meis Family Trust UTA 8/22/95;
Joel E. Colley; Mickell A. Colley;
Richard Meloy; Seattle ATC Partnership,
a partnership consisting of
David Andrews, John Mitchell, Thomas Parks,
Donald Stobie and Gerald Traynor,
*Plaintiffs,*

*and*

John J. LENAHAN;
Marilyn S. Lenahan;
Willowrun, L.P.,
an Oregon limited partnership;
*Respondents on Review,*

*v.*

Gary H. ARIZALA;
Quentin L. Breen; Breen Family Trust;
John Duffy; Anthony Easton; Frank R. Goldstein;
Ed Janowski; Javier O. Lamoso;
Morgan, Lewis & Bockius, LLP,
a limited liability partnership;
Fred H. Martinez; Theresa Miller;
Margaret W. M. Minnich; Lawrence Odell;
James T. Perry; Mohammad Rahman;
Romulus Corporation,
a Delaware corporation;
Romulus Telecommunications, Inc.,
a Puerto Rico corporation;
Romulus Engineering, Inc.,
a Delaware corporation;

Unicom Corporation,
a Puerto Rico corporation;
Supertel Communications Corporation,
a Puerto Rico corporation,
and Clearcomm L.P.,
a Delaware limited partnership,
formerly known as PCS 2000, L.P.,
*Petitioners on Review,*

*and*

Susan D. EASTON;
SDE Trust; and Gary North,
*Respondents.*

BROWN AND BOSTON PCS 2000,
a partnership consisting of
Conrad Brown and Nixon Ray Boston;
Kenneth Brown, as Trustee for the
Brown Family Trust;
William Sean Conway; Lisa M. Conway; Greg Downing;
Donald F. Escher and Shirley P. Escher,
Trustees for the Escher Daughters Trust;
Harvey A. Gilbert and Deanne E. Gilbert,
as Trustees for the Gilbert Family Trust;
Kurt Gruen; Reyna Gruen; Joseph M. Ha;
John F. Johnson and Anne R. Johnson,
Trustees for the John F. and Anne R. Johnson Trust;
Harold E. Jones as Trustee for the
Harold E. Jones Profit Sharing Trust;
Virginia J. Jones; Caroline B. Kazmann,
Trustee for the Belle M. Beem Trust;
Hollis Kazmann; Ingrid Kluk;
Knoxville IVDS Group,
a partnership consisting of
Robert Seaman and others;
Donald C. Linkem; Donald J. Meis; Nadine E. Meis;
Edmund J. Mooney, Trustee for the
Edmund J. Mooney Trust;
J. Ray O'Connor and Maurine O'Connor,
Trustees for the J. Ray O'Connor
Revocable Family Trust;
Bill Ohman; Colleen Ohman; James Popa;

RPM2 Group Limited Partnership,
a partnership consisting of
Michael Suenram, Pamela Suenram,
Melburn E. Suenram and Rose M. Suenram;
Nancy L. Ryan; the Estate of Arthur J. Ryan;
S&L Properties,
a partnership consisting of
Douglas A. Shinstine and Eric A. Luther;
Elizabeth J. Seaman; Shelley A. McCoy;
Ralph L. Stean, Trustee for the
Ralph L. Stean Revocable Living Trust U/A April 14, 1992;
James F. Stengel, Trustee for the
James F. Stengel Living Trust dated 9/28/94;
Gretchen B. Stengel as Trustee for
the Gretchen B. Stengel Living Trust dated 9/28/94;
and Russell S. Wunschel,
*Plaintiffs,*

*v.*

Gary H. ARIZALA;
Quentin L. Breen; Breen Family Trust;
John Duffy; Anthony Easton; Susan D. Easton;
SDE Trust; Frank R. Goldstein;
Ed Janowski; Javier O. Lamoso;
Morgan, Lewis & Brokius, LLP,
a limited liability partnership;
Fred H. Martinez; Theresa Miller;
Margaret W. M. Minnich; Gary North;
Lawrence Odell; James T. Perry; Mohammad Rahman;
Romulus Corporation,
a Delaware corporation;
Romulus Telecommunications, Inc.,
a Puerto Rico corporation;
Romulus Engineering, Inc.,
a Delaware corporation;
Romulus Engineering (MAS) Inc.,
a Delaware corporation;
Datalink Network, Inc.,
a purported corporation;
Romulus Engineering (IVD), Inc.,
a Delaware corporation;

Wireless Express Limited Partnership,
a Delaware limited partnership,
fka IVDS Auction Consortium Limited Partnership;
IVDS Management, Inc.,
a Delaware corporation;
Unicom Corporation,
a Puerto Rico corporation;
Supertel Communications Corporation,
Puerto Rico corporation,
and Clearcomm L.P.,
a Delaware limited partnership,
formerly known as PCS 2000 L.P,
*Defendants.*

(CC 9611-09017, 9708-06851; CA A104791; SC S49774)

95 P3d 1109

Timothy R. Volpert, Davis, Wright, Tremaine, LLP, Portland, argued the cause for petitioners on review. On the briefs were Darleen Darnall, Robert D. Newell, and Jeffrey J. Schick, Davis, Wright Tremaine, LLP, Portland; Joseph C. Arellano, Kennedy Watts Arellano & Ricks LLP, Portland; Bruce L. Campbell and Thomas C. Sand, Miller Nash Wiener Hager & Carlsen, LLP, Portland; Steven K. Blackhurst, Ater Wynne Hewitt Dodson & Skerritt, Portland; and Michael D. Kennedy, Kennedy Bowles, PC, Portland.

Helen T. Dziuba, The Law Office of Helen T. Dziuba, Lake Oswego, argued the cause for respondents on review. With her on the briefs were Roger K. Harris, Harris, Berne, Christensen, LLP, Portland.

Before Carson, Chief Justice, Gillette, Durham, Riggs, and De Muniz, Justices.**

DURHAM, J.

---

** Balmer and Kistler, JJ., did not participate in the consideration or decision of this case.

**DURHAM, J.**

This is an action for damages alleging securities law violations and related torts. The principal issue on review is whether the trial court erred in dismissing the action on the ground that the parties' limited partnership agreement required plaintiffs to file their claims in San Juan, Puerto Rico. The Court of Appeals reversed. For the reasons set out below, we affirm the decision of the Court of Appeals.

The trial court consolidated two actions by two groups of plaintiffs against two overlapping groups of defendants. On review, the only claims before the court are those of three parties to the *Black v. Arizala* action, John J. Lenahan, Marilyn S. Lenahan, and Willowrun, L.P. (plaintiffs), who are Oregon residents.

Plaintiffs filed their claims after they had invested money in PCS 2000, L.P. (PCS), a Delaware limited partnership headquartered in San Juan, Puerto Rico. Plaintiffs alleged that, in the process of selling limited partnership interests in PCS to plaintiffs, defendants violated the securities laws of the United States and other jurisdictions, including Oregon; committed common-law fraud; and violated the Oregon Racketeer Influenced and Corrupt Organization Act (ORICO), ORS 166.715 to 166.735.

The Court of Appeals summarized the pertinent factual allegations as follows:

"Plaintiffs invested in PCS by purchasing limited partnership interests. As part of the purchase, they became parties to the PCS Agreement of Limited Partnership (the Agreement). All of their claims in this case are based on events that occurred before they purchased those interests and became parties to the Agreement. Among other things, plaintiffs allege that defendants represented that PCS could buy licenses from the [Federal Communications Commission] at a certain price when defendants in fact did not know what the price would be; did not disclose the cost of engineering, acquiring, and installing the necessary equipment; did not disclose the risk of losing the licenses if PCS failed to raise sufficient capital or to build the infrastructure within the required times; did not disclose that two

principal promoters had been involved in previous unsuccessful transactions in the telecommunications industry and had defaulted on guarantees to equipment suppliers, creating a risk that it would be more difficult for PCS to raise capital; and did not disclose the increased costs and disadvantages of the technology that PCS would use in comparison to conventional cellular telephones.

"The trial court dismissed the case based on the choice of law, forum selection, and arbitration clause of the Agreement. That clause provides:

" 'This Agreement shall be construed and enforced in accordance with and governed by the law of the State of Delaware, excluding that body of law relating to conflicts of law. Any dispute under this Agreement shall be submitted to binding arbitration in San Juan, Puerto Rico under the rules of the American Arbitration Association concerning commercial disputes, and the parties agree to be bound by any decision reached under such rules. Any arbitrator shall be specifically bound by the provisions respecting limitation of liability set forth in this Agreement. Venue for any legal action arising from this Agreement, including enforcement of any arbitration award, shall be in San Juan, Puerto Rico.'

"Although this clause appears to provide for arbitration as the primary method of resolving disputes under the Agreement, defendants did not ask the court to order plaintiffs to arbitrate their claims. Rather, they relied on the final sentence, which establishes venue 'for any legal action arising from this Agreement' in Puerto Rico. They argued that that sentence required plaintiffs to bring this action in Puerto Rico, not in Oregon. The trial court agreed and dismissed the case."

*Black v. Arizala*, 182 Or App 16, 22-23, 48 P3d 843 (2002).

The parties agree (as do we) that the venue agreement in the last sentence of the contractual provision quoted above is the focal point of their dispute. Defendants sought to enforce that contractual provision by filing a motion to dismiss the complaint, relying on ORCP 21 A as their authority for the motion. ORCP 21 A provides:

"Every defense, in law or fact, to a claim for relief in any pleading, whether a complaint, counterclaim, cross-claim

or third party claim, shall be asserted in the responsive pleading thereto, except that the following defenses may at the option of the pleader be made by motion to dismiss: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) that there is another action pending between the same parties for the same cause, (4) that plaintiff has not the legal capacity to sue, (5) insufficiency of summons or process or insufficiency of service of summons or process, (6) that the party asserting the claim is not the real party in interest, (7) failure to join a party under Rule 29, (8) failure to state ultimate facts sufficient to constitute a claim, and (9) that the pleading shows that the action has not been commenced within the time limited by statute. A motion to dismiss making any of these defenses shall be made before pleading if a further pleading is permitted. The grounds upon which any of the enumerated defenses are based shall be stated specifically and with particularity in the responsive pleading or motion. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If, on a motion to dismiss asserting defenses (1) through (7), the facts constituting such defenses do not appear on the face of the pleading and matters outside the pleading, including affidavits, declarations and other evidence, are presented to the court, all parties shall be given a reasonable opportunity to present affidavits, declarations and other evidence, and the court may determine the existence or nonexistence of the facts supporting such defense or may defer such determination until further discovery or until trial on the merits. If the court grants a motion to dismiss, the court may enter judgment in favor of the moving party or grant leave to file an amended complaint. If the court grants the motion to dismiss on the basis of defense (3), the court may enter judgment in favor of the moving party, stay the proceeding, or defer entry of judgment pursuant to subsection B(3) of Rule 54."[1]

In moving to dismiss on the basis of the venue agreement, defendants did not cite the subsection of ORCP 21 A on which they relied. Neither did the trial court base its order of dismissal on a particular subsection of ORCP 21 A.

---

[1] In this case, the 1997 version of ORCP 21 A is the applicable version because it was the one in effect when defendants' filed their motion. Since 1997, ORCP 21 A has been amended twice. However, because those amendments do not bear on our analysis in this case, we have quoted the current version of ORCP 21 A.

The Court of Appeals held that the trial court erred in considering defendants' motion under ORCP 21 A because defendants had relied on facts outside those stated in plaintiffs' complaint. The Court of Appeals concluded, in accordance with plaintiffs' argument, that "[d]efendants' motion was the functional equivalent of a summary judgment motion under ORCP 47 C." *Black*, 182 Or App at 27. The Court of Appeals held that dismissal was improper under ORCP 47 because the venue agreement was ambiguous and arguably did not apply to disputes, like the present one, over defendants' actions that predated execution of the contract. *Id.* at 29-30.

Judge Armstrong concurred in the result that the Court of Appeals majority reached. He concluded that the Oregon Rules of Civil Procedure did not provide a procedural mechanism for enforcing a venue agreement between the parties. He also concluded that ORS 1.160 authorized the court to fashion a suitable procedure for accomplishing that objective, including consideration of a motion to dismiss the complaint.[2] Judge Armstrong agreed with the Court of Appeals majority that plaintiffs' claims focused exclusively on events that preceded formation of the parties' contract and did not seek to enforce any duty provided in the contract. However, he concluded that the venue agreement was unambiguous and did not apply to plaintiffs' claims. Consequently, he agreed that the trial court had erred in dismissing the complaint. *Id.* at 41 (Armstrong, J., concurring).

On review, defendants adopt Judge Armstrong's view regarding the trial court's authority under ORS 1.160 to consider their motion to dismiss. Plaintiffs challenge the applicability of the venue agreement to this dispute and assert that the court has no authority to address that issue through a motion to dismiss under ORCP 21 A. They point out that the grounds for a motion to dismiss set out in

---

[2] ORS 1.160 provides:

"When jurisdiction is, by the Constitution or by statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by the procedural statutes, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the procedural statutes."

ORCP 21 A do not include a plaintiff's asserted failure to commence the action in a venue that a contract between the parties requires. They also contend that, because defendants based their motion on facts not alleged in the complaint, the motion was, in reality, a motion for summary judgment, not a motion to dismiss, and that the presence of a genuine issue about the material facts precluded summary judgment. *See* ORCP 47 C (summary judgment proper if record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). Plaintiffs also argue that defendants failed to preserve their argument based on ORS 1.160.

We first address the question whether Oregon law authorized the trial court to consider a motion to dismiss the complaint on the ground that an agreement required the parties to litigate the claims in a different venue. In analyzing that question, the Court of Appeals determined that ORCP 21 A(1), which authorizes a motion to dismiss for "lack of jurisdiction over the subject matter," did not apply, stating:

"In our view, the issue concerning the enforceability of a forum selection clause in a contract is a matter of contract law and not a matter that would implicate subject matter jurisdiction under ORCP 21 A(1). * * * The concept of subject matter jurisdiction is well defined as pertaining to the authority of the court to deal with the general subject involved in the action. 'It exists when the constitution, the legislature or the law has told a specific court to do something about the specific kind of dispute in issue.' Under the Oregon Constitution, subject matter jurisdiction exists in the circuit courts unless a statute or rule of law divests them of jurisdiction.

"Merely because the parties have agreed upon a forum selection clause that limits where the parties may litigate their disputes under their agreement does not implicate subject matter jurisdiction. Parties by agreement have neither the power to confer or the power to divest an Oregon court of subject matter jurisdiction. The issue of the enforceability of a forum selection clause is qualitatively different from the issue of subject matter jurisdiction. * * * In sum, ORCP 21 A(1) does not authorize a motion for dismissal on the basis of a forum selection clause."

182 Or App at 25-26 (citations and footnote omitted). The Court of Appeals then concluded that, because defendants' motion to dismiss relied on matter outside the facts stated in the complaint, it was, in reality, a motion for summary judgment.

■■    Whether ORCP 21 A(1) or some other provision of Oregon Rules of Civil Procedure authorizes the court to consider a motion to dismiss a complaint due to a venue agreement of the kind involved here is an issue that turns on the intent of the legislature. This court construes the provisions of the Oregon Rules of Civil Procedure according to the same methodology that applies to the interpretation of statutes. *Mulier v. Johnson*, 332 Or 344, 349, 29 P3d 1104 (2001). Consequently, we examine the text and context of the pertinent rules. Context includes, among other things, statutory predecessors of the current rules and any interpretations of those earlier statutes by this court. *See SAIF v. Walker*, 330 Or 102, 108-12, 996 P2d 979 (2000) (illustrating principle).

Neither ORCP 21 A(1) nor any other section of the Oregon Rules of Civil Procedure expressly provides for the dismissal of a complaint due to an agreement to litigate claims in a different venue. However, the context of ORCP 21 A(1) sheds light on the legislature's intent in that regard.

The Oregon legislature enacted the Oregon Rules of Civil Procedure in 1979 and made them operative on January 1, 1980. Or Laws 1979, ch 284, §§ 3, 201. Before the adoption of the Oregon Rules of Civil Procedure, an Oregon statute, *former* ORS 16.260 (1977), *repealed by* Or Laws 1979, ch 284, § 199, authorized the use of a different procedural device—a demurrer—to obtain dismissal of a complaint when the court lacked subject matter jurisdiction. That statute provided, in part:

> "The defendant may demur to the complaint within the time required by law to appear and answer, when it appears upon the face thereof:
>
> "(1)    *That the court has no jurisdiction of* the person of the defendant, or *the subject of the action*[.]"

(Emphasis added.)

*Former* ORS 16.260(1) was in effect for decades before the enactment of the Oregon Rules of Civil Procedure in 1979 brought about its repeal. Oregon courts routinely considered the dismissal of civil complaints for lack of subject matter jurisdiction under *former* ORS 16.260(1). *See, e.g., Local 9206 CWA v. Maloney*, 259 Or 470, 486 P2d 1275 (1971) (trial court had subject matter jurisdiction over complaint seeking enforcement of local union's fine on member; court reversed trial court's judgment dismissing complaint after grant of demurrer); *Corvallis S. & G. Co. v. H. & P. Eng.*, 247 Or 158, 419 P2d 38, *cert den*, 387 US 904 (1967) (federal law preempted authority of circuit court to grant recision of collective bargaining agreement; court affirmed trial court's dismissal of complaints after sustaining defendants' demurrers that asserted lack of jurisdiction of subject matter).

ORCP 21 A(1) changed slightly the wording that describes a challenge to subject matter jurisdiction. Whereas a demurrer under *former* ORS 16.260(1) could raise the absence of "jurisdiction of * * * the subject of the action[,]" a motion to dismiss under ORCP 21 A(1) authorizes the assertion of a "lack of jurisdiction over the subject matter." We perceive no distinction in the substantive effect of those two quoted phrases. Further, we have found no evidence that the legislature's adoption of that slight difference in wording in ORCP 21 A(1) made any change in the substantive authority of Oregon courts to consider the dismissal of a complaint due to a lack of subject matter jurisdiction. As a result, Oregon cases that determined the court's authority to dismiss a complaint under *former* ORS 16.260(1) are context for our inquiry into the intent of the legislature in adopting ORCP 21 A(1).

One case is instructive. In *Reeves v. Chem Industrial Co.*, 262 Or 95, 495 P2d 729 (1972), the plaintiff, a resident of Oregon, entered into a contract with the defendant to distribute its goods. A dispute arose, and the plaintiff brought a breach of contract action in Oregon. The defendant "moved to quash and dismiss" the complaint, *id.* at 96, arguing that the parties had contracted that they would litigate any claims arising out of the contract in the courts of Ohio.

This court began by acknowledging that it had held in a 1928 case "that an agreement to confer exclusive jurisdiction upon the courts of a particular jurisdiction is void." *Id.* at 97 (*citing State ex rel Kahn v. Tazwell,* 125 Or 528, 543, 266 P 238 (1928)). The court, however, acknowledged and followed what it determined was the trend of the law to the contrary. Citing a variety of authorities, the court concluded that it would enforce a contractual provision regarding an exclusive forum by dismissing an action filed in a forum not agreed to by the parties unless the court determined that the contractual provision was unfair or unreasonable. *Reeves,* 262 Or at 101. The court explained that Oregon courts had authority to decline to exercise jurisdiction and to dismiss an action to enforce a valid agreement between the parties:

> "It should be understood that we are not holding that such clause 'ousted' the Oregon court from jurisdiction. We are not deciding whether Oregon had jurisdiction under the long-arm statute. We are holding that if Oregon has jurisdiction the Oregon court nevertheless will dismiss the action because the contract clause agreeing upon the courts of Cleveland, Ohio, as the place for litigation over the contract is valid and should be enforced. This conclusion is reached because there is no evidence that the clause is unfair or enforcement would be unreasonable."

*Id.* This court affirmed the trial court's order granting dismissal of the complaint.

There is no question that, as a general proposition, the Oregon court in *Reeves* had subject matter jurisdiction over actions for breach of contract. *See School Dist. No. 1, Mult. Co. v. Nilsen,* 262 Or 559, 566, 499 P2d 1309 (1972) (" '[J]urisdiction over the subject matter exists when the constitution or the legislature or the unwritten law has told *this court* to do *something* about *this kind of dispute.*' (Emphasis in original.)"); *Garner v. Alexander,* 167 Or 670, 675, 120 P2d 238 (1941), *cert den,* 316 US 690 (1942) (" 'Jurisdiction of the subject-matter is the power to deal with the general subject involved. In other words, the court must have cognizance of the class of cases to which the one to be adjudicated belongs.' "). However, the court determined that it would not exercise its jurisdiction and instead would dismiss the action to give

effect to the parties' enforceable agreement to litigate breach of contract claims in the courts of Ohio.

For present purposes, it is helpful to analyze the *Reeves* decision in terms of the then-current statute—*former* ORS 16.260(1)—that governed the court's authority to dismiss an action due to the absence of "jurisdiction of * * * the subject of the action." The court regarded its conclusion, that the parties' forum agreement was enforceable, as a legal determination that required the trial court to relinquish its jurisdiction over the subject of the action. That is, the specific, private law established by the parties' valid agreement superseded the general jurisdiction of the Oregon courts over claims for breach of contract.

The analysis that the court followed in *Reeves* provides helpful context for our interpretation of ORCP 21 A(1). It is clear that, as in *Reeves*, a conclusion of an Oregon court that the parties' venue agreement is valid and enforceable is a legal determination that requires the court to dismiss the action in response to a timely motion to dismiss for lack of jurisdiction over the subject matter. From the foregoing discussion, we may conclude tentatively that the legislature intended ORCP 21 A(1) to authorize the courts to dismiss an action if the parties had entered into a valid agreement to litigate contract claims in another venue.

In support of its contrary reading of ORCP 21 A(1), the Court of Appeals relied on two other contextual sources. We turn to them now.

■ The Court of Appeals determined that defendants' motion sought dismissal under ORCP 21 A(8) for failure to state ultimate facts sufficient to constitute a claim. According to that court, ORCP 21 A(8) does not permit the trial court to rely on facts beyond those pleaded in the complaint in deciding the legal sufficiency of the complaint. That conclusion led the Court of Appeals, as already noted, to decide that defendants' motion was the functional equivalent of a motion for summary judgment under ORCP 47 C and that dismissal was not permissible under that rule because the parties' agreement regarding venue was ambiguous.

The reasoning of the Court of Appeals reflects a valid concern that, in addressing defendants' motion, the court must confine its analysis to the correct components of the record and must not permit a party to evade the standards in ORCP 47 by characterizing a motion under that rule inaccurately as a motion to dismiss. Those analytical principles are unquestionably correct in their proper context, but, as we explain below, they have no application here.

Defendants' motion sought dismissal to enforce an alleged venue agreement, not because the complaint failed to allege facts sufficient to constitute a claim. That distinction is important, because, in theory, a venue agreement may require dismissal notwithstanding the presence in the complaint of a sufficient statement of facts constituting a claim.[3] The Court of Appeals erred in characterizing the basis for defendants' motion to dismiss. Because ORCP 21 A(8) was not applicable here, neither was the requirement that pertains to that rule that the court must confine its analysis to the facts alleged in the complaint.

■ ■  We also conclude that, on the facts of this case, defendants' reliance on facts outside the scope of the complaint did not transform the motion to dismiss into a motion for summary judgment under ORCP 47. The trial court has authority under ORCP 21 A(1) through (7) to consider whether to dismiss a complaint on the basis of facts drawn both from the complaint and "matters outside the pleading, including affidavits, declarations and other evidence." Under that rule, the court must use care to insure that its determination of the facts on a motion to dismiss does not interfere with a party's right to a trial on disputed questions of material fact. *See Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 643, 576 P2d 1244 (1978) (distinguishing legal questions from factual ones in construction of contracts). But,

---

[3] In the Court of Appeals, defendants argued that the trial court had authority to determine the pertinent facts from sources outside the complaint because, in reality, their motion asserted a lack of personal jurisdiction under ORCP 21 A(2). But defendants' motion did not assert a lack of personal jurisdiction. The issue that defendants' motion raised had no necessary relationship to the question whether the court had personal jurisdiction over the parties to the action.

that concern aside, a trial court may consider, in the context of a timely motion to dismiss under ORCP 21 A(1), evidence that the parties submit regarding a venue agreement and whether it is ambiguous.

■ We have discovered no other contextual sources that point to any other plausible reading of ORCP 21 A(1). The legislature's intent is clear from an examination of the text and context of ORCP 21 A(1). We conclude that ORCP 21 A(1) authorizes Oregon courts to dismiss an action for lack of jurisdiction over the subject matter when the motion is timely filed and the record demonstrates that the parties have an enforceable agreement to litigate the action in a different venue.

The foregoing discussion demonstrates that Oregon's procedural rules point out the course that the court must follow in deciding whether a venue agreement requires dismissal. Consequently, this court has no occasion in this case to adopt a mode of proceeding under ORS 1.160. The remaining question is whether the trial court correctly determined that the parties' venue agreement required dismissal.

■ The parties' venue agreement provides that "[v]enue *for any legal action arising from this Agreement*, including enforcement of any arbitration award, shall be in San Juan, Puerto Rico." (Emphasis added.) When addressing the parties' competing arguments about the meaning of that provision, we bear in mind another provision of the parties' agreement that states:

> "This Agreement shall be construed and enforced in accordance with and governed by the law of the State of Delaware, excluding that body of law relating to conflicts of law."

The parties agree that Delaware law governs the construction of their contract, including the venue agreement. However, no party cites any Delaware statute, and plaintiffs cite only one Delaware Supreme Court decision, discussed below, that bears in any way on the proper construction of the venue agreement under Delaware law.

Our objective in construing the venue agreement is to discern the intent of the parties in entering into that agreement. The principal interpretive question before the court is whether plaintiffs' action is one "arising from" the parties' agreement. The dictionary defines the verb "arise" to include "to originate from a specific source[,]" "to come into being[,]" and "to become operative[.]" *Webster's Third New Int'l Dictionary* 117 (unabridged ed 1993). The dictionary also explains that "from" is "used as a function word to indicate the source or original or moving force of something: as * * * (4) the place of origin, source, or derivation of a material or immaterial thing[.]" *Id.* at 913. Applying those definitions, we conclude that the parties' agreement must be the specific place of origin or the source of the legal action to trigger application of the venue agreement.

The parties recognize that plaintiffs' claims stem from defendants' alleged misrepresentations made substantially before they entered into a contract. According to defendants, however, plaintiffs' claims nevertheless arise from the agreement, because, if plaintiffs had not entered into the agreement, then they would have suffered no damages from any alleged misrepresentation and would have no claims. Defendants also contend that the venue agreement applies to any legal action arising from the agreement, not to misrepresentations arising from the agreement, and that plaintiffs' legal claims arose only because they chose to invest in PCS by entering into the agreement.

Plaintiffs respond by arguing that their claims assert violations of duties imposed on defendants by securities statutes and the law of torts, and that none of their claims relies on any promise or duty that has its source in the parties' agreement. They emphasize that they were not parties to the agreement when defendants allegedly made the representations that provide the basis of plaintiffs' claims. They also point out that the agreement itself contains no representations that might induce a person to invest in PCS. Plaintiffs indicate that their action will not require the court to interpret any term or clause in the agreement and that their evidence, instead, will focus on facts that predate contract formation, especially their reliance on written and oral solicitations that ultimately led them to invest in PCS.

Finally, plaintiffs contend that they can establish the falsity of defendants' offering materials and oral representations, and their right to rescind the agreement, without referring to any provision of the agreement.

This court has not addressed those interpretive issues, but the Delaware Supreme Court recently answered similar questions in a case that sheds light on the problem now before this court. In *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A2d 149 (Del 2002), *cert den*, 538 US 1032 (2003), several corporate investors (Xcelera), entered into an underwriting agreement with the defendant Mirror Image Internet, Inc. (Mirror Image), in which Xcelera agreed to provide needed funds in exchange for a controlling stock interest in Mirror Image. In the underwriting agreement, "the parties agreed that any dispute, controversy, or claim 'arising out of or in connection with this Agreement, or the breach, termination or invalidity thereof, shall be settled by arbitration' in Sweden." *Id.* at 151-52. When the parties' relationship deteriorated, minority shareholders (Parfi) in Mirror Image submitted several breach of contract claims to arbitration in Sweden, as the underwriting agreement required. Parfi also brought an action in the Delaware court against Mirror Image and Xcelera for a breach of fiduciary duties that they owed to Mirror Image stockholders, as well as claims of fraud, conspiracy, implied contract, and misappropriation of a corporate opportunity. The trial court granted a motion to dismiss the action in part on the ground that Parfi failed to submit the latter claims to mandatory arbitration under the underwriting agreement. *Id.* at 154.

On appeal, the Delaware Supreme Court reversed, stating:

> "When parties to an agreement decide that they will submit their claims to arbitration, Delaware courts strive to honor the reasonable expectations of the parties and ordinarily resolve any doubt as to arbitrability in favor of arbitration. Nevertheless, arbitration is a mechanism of dispute resolution created by contract. An arbitration clause, no matter how broadly construed, can extend only so far as the series of obligations set forward in the underlying agreement. Thus, arbitration clauses should be applied only to claims that bear on the duties and obligations under

the Agreement. The policy that favors alternate dispute resolution mechanisms, such as arbitration, does not trump basic principles of contract interpretation.

"When [the parties] agreed to the arbitration provision in the Underwriting Agreement they did not commit to bring into arbitration every possible breach of duty that could occur between the parties. The arbitration clause signals only an intent to arbitrate matters that touch on the rights and performance related to the contract. The term 'arising out of or in connection with' must be considered in that light. The Court of Chancery should have concentrated on the similarity of the separate *rights* pursued by plaintiffs under both the contract and the independent fiduciary duties rather than the similarity of the *conduct* that led to potential claims for both the contract and fiduciary breaches of duty.

"Parfi can maintain an action based on the alleged breaches of the independent set of fiduciary duties that Xcelera owes Mirror Image stockholders even though the claims arise from some or all of the same facts that relate to the transactions that provided the basis for its contract claims. Xcelera's fiduciary duties to Mirror Image consist of a set of rights and obligations that are independent of any contract and need be submitted to arbitration only if the claims based on fiduciary duties touch on the obligations created in the Underwriting Agreement. If the Underwriting Agreement does not implicate Xcelera's fiduciary duties, the arbitration clause cannot bar Parfi from seeking the relief every other stockholder is entitled to under Delaware law."

*Id.* at 155-57 (emphasis in original; footnotes omitted).

There are obvious differences between a contractual duty to arbitrate claims arising under a contract, as in *Parfi*, and a contractual duty to litigate claims arising under a contract in a specified venue, as in this case, but those differences play no role here. To paraphrase the *Parfi* court, we must focus on whether plaintiffs' action sought to enforce the rights and duties that the parties' contract created or, instead, the rights and duties created by sources of law external to the parties' contract. To address that question, we turn to the claims stated in plaintiffs' complaint.

Plaintiffs' first amended complaint is the operative pleading. In that complaint, plaintiffs alleged that defendants had sold, participated in, or materially aided in the sale of PCS securities to plaintiffs by means of untrue statements and omissions of fact, including nondisclosure of various risks associated with the investment, such as the allegedly poor track record of those offering the security. Plaintiffs alleged that the sellers of the securities had defrauded them. They also alleged that the sellers had sold the securities in violation of several Oregon securities statutes, including ORS 59.115(1)(b), several federal securities statutes, including 15 USC § 77e, and ORICO, ORS 166.715 to 166.735. Plaintiffs demanded relief under those claims of treble damages, plus attorney fees and costs.

As already noted, defendants argue that the venue agreement nevertheless applies to those claims because the contract was the means by which plaintiffs purchased the securities in question and, thus, the contract is the origin or source of their legal action. That reasoning is flawed, because it disregards the noncontractual nature of the allegedly improper acts that are the sources of the rights and duties that plaintiffs' action sought to enforce. As the *Parfi* decision recognized, plaintiffs may maintain an action based on noncontractual sources of their rights even though the claims arise from some of or all the same facts that relate to the parties' contractual transactions. *Id.* at 156-57. *Parfi* also noted that, if an agreement is merely a source of information that the court may find useful in its analysis of the plaintiffs' claims, then the agreement does not require arbitration of the claims. *Id.* at 157 n 25. We think that a Delaware court would conclude that the same analysis applies here. The fact that the parties' contract may help to explain their securities transaction and, potentially, the extent of plaintiffs' alleged economic injuries does not transform plaintiffs' action into a claim that arises from the contract.

We conclude that the parties' agreement is not the source of the legal action that plaintiffs filed. Consequently, the venue provision of that agreement does not apply to plaintiffs' claims. The parties' venue agreement is not ambiguous in that respect. The trial court erred in dismissing plaintiffs' complaint on the basis of the venue agreement.

■ Defendants contend that the trial court's dismissal of plaintiffs' ORICO claim was correct for a separate reason. According to defendants, the legislature in 1995 added a requirement that a plaintiff prove that a conviction of the defendant in the ORICO action "has been obtained" and that any rights of appeal have expired. ORS 166.725(6), (7); Or Laws 1995, ch 619, § 1. At present, a claim under ORICO accrues only when the government obtains the conviction of the defendant. ORS 166.725(11)(b). Defendants argue that the verb tense of the phrase "has been obtained" demonstrates that the legislature made the amendment retroactive to existing ORICO claims.

We begin by noting that plaintiffs had an accrued ORICO claim before the legislature enacted the 1995 amendment. Defendants do not contend that that claim was insufficient except for the 1995 amendment discussed above.

■ As a general matter, we assume that the legislature intends its amendments to existing legislation to apply prospectively unless the legislature signals an intention to apply an amendment retrospectively. *Hall v. Northwest Outward Bound School*, 280 Or 655, 660, 572 P2d 1007 (1977). Our difficulty with defendants' argument is that the phrase in which they rely, "has been obtained," provides no signal that the legislature intended that its amendment shall apply to transactions that precede the legislative amendment. Rather, it states a condition that must exist when a plaintiff files an ORICO claim.

■ This court ordinarily declines to construe a legislative amendment to have a retrospective effect if to do so would "impair existing rights, create new obligations or impose additional duties with respect to past transactions." *Derenco v. Benj. Franklin Fed. Sav. and Loan*, 281 Or 533, 539 n 7, 577 P2d 477, *cert den*, 439 US 1051 (1978). In this case, retrospective application of the legislature's 1995 amendment would impair plaintiffs' existing right under the former ORICO statute. In the absence of some indication that the legislature intended to apply its amendment retrospectively, we adhere to our usual assumption that the legislature intended a prospective application of its amendment.

For that reason, the trial court's additional reason for dismissing plaintiffs' ORICO claim was incorrect.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.