Argued and submitted January 3, 2013, vacated and remanded October 8, 2014, petition for review allowed April 9, 2015 (357 Or 143)

Rosa Aurelia Palacios ESPINOZA,
Personal Representative of the Estate of
Victor Andres Espinoza Horna, Deceased
for her own benefit as the surviving spouse
and for the benefit of Micaela Ariana Espinoza
and Mariam Andrea Espinoza,
surviving children of the deceased,
*Plaintiff-Appellant,*
*v.*
EVERGREEN HELICOPTERS, INC.,
an Oregon corporation,
*Defendant-Respondent,*
*and*
Bobbi CRANN,
Personal Representative of the Estate of
Alan Crann, Deceased,
*Defendant.*
Multnomah County Circuit Court
090912350;

Erika Consuelo Machado MERINO,
Personal Representative of the Estate of
Juan Francisco Garcia Rubio, Deceased,
for her own benefit as the surviving spouse
and for the benefit of Macarena Garcia Machado
and Mariono Garcia Santolalla,
surviving children of the deceased,
and Arturo Benjamin Garcia Pinillos,
surviving father of the deceased,
*Plaintiff-Appellant,*
*v.*
EVERGREEN HELICOPTERS, INC.,
an Oregon corporation,
*Defendant-Respondent,*
*and*
Bobbi CRANN,

Personal Representative of the Estate of
Alan Crann, Deceased,
*Defendant.*

Multnomah County Circuit Court
090912777;

July Marlene Churata FERNANDEZ,
Personal Representative of the Estate of
Christian Martin Querevalu Quiroz, Deceased,
for her own benefit as the surviving spouse and for
the benefit of Camila Milagros Querevalu Churata,
surviving child of the deceased,
Freddy Quiroz Dulanto De Querevalu,
and Rolandi Querevalu Suarez,
surviving parents of the deceased,
*Plaintiff-Appellant,*

*v.*

EVERGREEN HELICOPTERS, INC.,
an Oregon corporation,
*Defendant-Respondent,*

*and*

Bobbi CRANN,
Personal Representative of the Estate of
Alan Crann, Deceased,
*Defendant.*

Multnomah County Circuit Court
090913294;

Flor De Maria Gamboa ALVAREZ,
Personal Representative of the Estate of
Fernando Cesar Nunez Del Prado Reynoso, Deceased,
for her own benefit as the surviving spouse and for the
benefit of Caroline Anthuanet Nunez Del Prado Gamboa
and Fernando Junior Nunez Del Prado Gamboa,
surviving children of the deceased,
and Margarita Severiana Reynoso Quispe
and Ricardo Cesar Nunez Del Prado Saavedra,
surviving parents of the deceased,
*Plaintiff-Appellant,*

*v.*

EVERGREEN HELICOPTERS, INC.,
an Oregon corporation,
*Defendant-Respondent,*
*and*

Bobbi CRANN,
Personal Representative of the Estate of
Alan Crann, Deceased,
*Defendant.*

Multnomah County Circuit Court
091015153;

Flor Katherine Soto LICAN,
Personal Representative of the Estate of
Jose Luis Saldana Eustaquio, Deceased,
for her own benefit as the surviving spouse
and for the benefit of Joseph Saldana Soto,
Luiggi Saldana Soto, Miguel Angel Saldana Soto,
Maria Elizabeth Saldana Gutierrez,
and Alexandra Himena Saldana Gutierrez,
surviving children of the deceased,
and Amadeo Saldana Narro,
surviving father of the deceased,
*Plaintiff-Appellant,*
*v.*

EVERGREEN HELICOPTERS, INC.,
an Oregon corporation,
*Defendant-Respondent,*
*and*

Bobbi CRANN,
Personal Representative of the Estate of
Alan Crann, Deceased,
*Defendant.*

Multnomah County Circuit Court
091015154;

Olga Paulina Chiba QUISPE,
Personal Representative of the Estate of
Peter Michael Liza Chiba, Deceased,
for her own benefit as the surviving mother
and for the benefit of Jose Armando Liza Nunton,

surviving father of the deceased,
*Plaintiff-Appellant,*

*v.*

EVERGREEN HELICOPTERS, INC.,
an Oregon corporation,
*Defendant-Respondent,*

*and*

Bobbi CRANN,
Personal Representative of the Estate of
Alan Crann, Deceased,
*Defendant.*

Multnomah County Circuit Court
091217035;

Brenda Vilma Hoyle DE CASTRO,
Personal Representative of the Estate of
Miguel Max Castro Gutierrez, Deceased,
*Plaintiff-Appellant,*

*v.*

EVERGREEN HELICOPTERS, INC.,
an Oregon corporation,
*Defendant-Respondent,*

*and*

Bobbi CRANN,
Personal Representative of the Estate of
Alan Crann, Deceased,
*Defendant.*

Multnomah County Circuit Court
100202814;

Giovanna Patricia Otero DE VASQUEZ,
Personal Representative of the Estate of
Jhon Henry Vasquez Lopez, Deceased,
for her own benefit as the surviving spouse and
for the benefit of Angie Patricia Vasquez Otero,
Henry Gianpierre Vasquez Otero,
Karen Elizabeth Vasquez Otero,
and Jhon Henry Vasquez Otero,
surviving children of the deceased,
and Pablo Wilfredo Vasquez Meza,

surviving father of the deceased,
and Catalina Lopez De Vasquez,
surviving mother of the deceased,
*Plaintiff-Appellant,*

*v.*

EVERGREEN HELICOPTERS, INC.,
an Oregon corporation,
*Defendant-Respondent,*

*and*

Bobbi CRANN,
Personal Representative of the Estate of
Alan Crann, Deceased,
*Defendant.*

Multnomah County Circuit Court
100303637;

A147028

337 P3d 169

Richard S. Yugler argued the cause for appellants. With him on the briefs were Robert B. Hopkins, Matthew K. Clarke, and Landye Bennett Blumstein LLP.

Thomas W. Sondag argued the cause for respondent. With him on the brief was Lane Powell PC.

Cody Hoesly, Larkins Vacura LLP, Kathleen Moura and Law Office of Kathleen Moura filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

This case arises out of a helicopter crash in Peru that resulted in the death of everyone on board, including eight Peruvian passengers. Plaintiffs, the personal representatives of the estates of the passengers, brought wrongful death actions in Oregon against Evergreen Helicopters, Inc. (Evergreen), an Oregon corporation that was the lessor of the helicopter and employer of the pilot. The trial court granted Evergreen's motions to dismiss plaintiffs' actions based on its conclusion that Peru was the more convenient forum in which to litigate plaintiffs' claims. In this appeal, we are asked to decide whether dismissal based on the inconvenient-forum doctrine, or *forum non conveniens*, is available in Oregon, and, if it is, what standards apply to govern a trial court's application of the doctrine. Those are questions of first impression for us because no Oregon appellate court has directly confronted them before. We conclude that the inconvenient-forum doctrine is available, such that an Oregon trial court may decline to exercise its jurisdiction to try a case—based on considerations of convenience and justice—when an adequate, alternative forum is presently available in which to try the case. However, because we also conclude that the trial court relied on inappropriate factors to dismiss plaintiffs' actions, we vacate and remand to the trial court with instructions to reconsider its decision in light of our opinion.

Plaintiffs are the appointed personal representatives of the estates of eight people who died in a helicopter crash in Peru that occurred when they were being transported to a mining site during inclement weather. All eight decedents, and their personal representatives, are citizens of Peru. Evergreen is an Oregon corporation headquartered in Oregon. Evergreen acquired the subject helicopter through a sublease agreement and, in turn, leased the helicopter to a Canadian subsidiary of Helinka, a Peruvian company, which then subleased the helicopter to Helinka for use in Peru. As part of the sublease agreement, Evergreen provided pilots and maintenance personnel to work in Peru. The lead pilot of the helicopter on the day of the crash was an employee of Evergreen working in Peru under that arrangement.

Plaintiffs brought their wrongful death actions in Multnomah County, Oregon, against Evergreen based on theories of Evergreen's direct and vicarious liability in negligence for the crash.[1] In their complaints, seven of the plaintiffs alleged that Evergreen was negligent in the following ways:

> "A.  Failing to properly maintain, inspect, test and/or repair the subject helicopter and ensure that the subject helicopter was kept in a safe condition;
>
> "B.  Failing to properly train, supervise, and/or monitor flight crews, including pilots;
>
> "C.  Failing to properly navigate and/or operate the subject aircraft in a safe and competent manner given the prevailing weather and visibility conditions;
>
> "D.  Failing to take all emergency measures; and/or
>
> "E.  In negligently entrusting the subject helicopter.
>
> "* * * * *
>
> "A.  Failing to properly navigate and operate the subject helicopter in a safe and competent manner, thereby resulting in the subject crash;
>
> "B.  Failing to follow proper pre-flight and/or flight procedures given the knowledge of, or foreseeable operation of the aircraft in adverse weather; and/or
>
> "C.  Failing to warn plaintiff and/or plaintiff's decedent of the dangers associated with operation of the subject helicopter in adverse weather."

The eighth plaintiff, Brenda Vilma Hoyle De Castro, alleged that Evergreen was negligent in the following ways:

> "A.  In flying the helicopter in mountainous terrain in dangerously adverse weather conditions;
>
> "B.  In flying the helicopter in mountainous terrain when weather conditions impaired visibility;

---

[1] Plaintiffs filed eight separate cases, all of which were ultimately consolidated in the trial court after Evergreen filed its motions to dismiss in each case. Plaintiffs also brought claims against the estate of the pilot. The trial court dismissed the latter claims for insufficient service of process and lack of personal jurisdiction, and plaintiffs do not challenge that decision on appeal.

"C. In failing to terminate the flight upon encountering increasingly dangerous adverse weather conditions;

"D. In failing to terminate the flight upon encountering increasingly diminished visibility;

"E. In flying into a cumulonimbus cloud in instrument meteorological conditions;

"F. In failing to maintain adequate control of the helicopter."

Evergreen moved to dismiss plaintiffs' actions under the inconvenient-forum doctrine, arguing that Peru is the more convenient forum in which to litigate plaintiffs' claims because the majority of witnesses and documents, as well as potential third-party defendants, are located in Peru and because Peruvian law should control. Plaintiffs conceded that Peru is an adequate, alternative forum, as long as Peru's applicable statute of limitation did not bar the action, but opposed the motion on several other grounds. Plaintiffs' arguments included that the inconvenient-forum doctrine is not available in Oregon, and, even if it were, dismissal is inappropriate in this case because witnesses and documents relevant to plaintiffs' claims are located in Oregon or elsewhere in the United States and because Oregon law should apply.

The trial court concluded that the inconvenient-forum doctrine was available and that it "grants the trial court discretion to dismiss an otherwise properly filed case if the court determines that an adequate alternative forum exists and that trying the action elsewhere would best serve the convenience of the parties and the ends of justice." In its letter opinion, the trial court found and concluded as follows:

"Plaintiffs conceded in their briefing that Peru is an adequate alternative forum. At oral argument and in subsequent briefing they changed their position, arguing that the statute of limitations under Peruvian law ran on March 11, 2010, and therefore, Peru is not an adequate alternative forum. I find defendants' offer to waive the statute of limitations to be sufficient to address this concern.

"The next step in my analysis is the weighing of a number of private and public interest factors to determine whether trying the action in Peru would best serve

the convenience of the parties and the ends of justice. The weighing of these factors depends in large part on how one views the dispute between the parties. The materials submitted by the parties persuade me that trial of this lawsuit will largely center on, and depend upon, witnesses and documents regarding circumstances in Peru at the time of the crash, rather than circumstances in Oregon or the United States. At oral argument, based on what counsel referred to as 'squawks,' plaintiffs suggested that with further discovery they may find evidence of a malfunction in the warning or altimeter systems installed by Evergreen in the United States. I decline to base my decision on such possibilities, especially given the record that is before me. Consequently, the private and public interest factors weigh in favor of dismissal, but conditioned on those concessions offered by Evergreen, including an effective waiver of the statute of limitations, and cooperation by Evergreen in making available witnesses and documents located in the United States."

In its dismissal order, the trial court specified the following conditions:

"1.   Defendant Evergreen Helicopters, Inc. must submit to the jurisdiction of the Peruvian court(s);

"2.   Defendant Evergreen Helicopters, Inc. must waive any and all statutes of limitations defenses and other time bar defenses pertaining to the claims alleged in these cases;

"3.   Defendant Evergreen Helicopters, Inc. agrees to be bound by valid and proper judgments entered in the appropriate Peruvian court(s) of law after exhausting all of its appellate rights, and will not object to the domestication and registration of such valid Peruvian judgments properly entered in the United States in accordance with applicable state and federal law;

"4.   Defendant Evergreen Helicopters, Inc. agrees to make available in Peru all employee witnesses and documents located in the United States; and

"5.   This dismissal is subject to the Peruvian court(s) in which the cases are filed (including all appellate courts in the event of appeals) accepting and upholding Evergreen Helicopters, Inc.'s waiver of any and all statutes of limitations and other time bar defenses, and not rejecting any of

the cases for lack of subject matter jurisdiction or of personal jurisdiction over Evergreen Helicopters, Inc."

The trial court entered a general judgment of dismissal in favor of Evergreen and dismissed plaintiffs' claims against Evergreen "without prejudice to their maintenance in Peruvian court(s) and subject to the Court's September 17, 2010 Order and the conditions stated therein."

On appeal, plaintiffs assert three assignments of error: (1) The trial court committed legal error when it concluded that the inconvenient-forum doctrine is available in Oregon as a means by which a trial court can decline to exercise its jurisdiction over a case. (2) The trial court committed legal error when it applied the factors from *Piper Aircraft Co. v. Reyno*, 454 US 235, 102 S Ct 252, 70 L Ed 2d 419 (1981), to determine if dismissal was appropriate in this case. (3) The trial court abused its discretion by concluding that, under the *Piper* factors, Peru was an adequate alternative forum and that the public- and private-interest factors favored trying the case in Peru and in basing its decision on its imposition of unenforceable conditions against a foreign court.

To place our discussion in context, we begin with a brief overview of the inconvenient-forum doctrine, also commonly known by its Latin name—*forum non conveniens.* That doctrine allows a court to dismiss an action over which it has jurisdiction and venue if trying the action in an alternative forum would "best serve the convenience of the parties and the ends of justice." *Novich v. McClean*, 172 Or App 241, 251, 18 P3d 424 (2001) (internal quotation marks omitted); *see also Koster v. (American) Lumbermans Mutual Casualty Co.*, 330 US 518, 527, 67 S Ct 828, 91 L Ed 1067 (1947) ("[T]he ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice."). "[T]he dismissal of a case for *forum non conveniens* presumes that the trial court has jurisdiction, but defers its jurisdiction in favor of the jurisdiction of another court." *Maricich v. Lacoss*, 204 Or App 61, 65-66, 129 P3d 193 (2006); *see also Gulf Oil Corp. v. Gilbert*, 330 US 501, 506-07, 67 S Ct 839, 91 L Ed 1055 (1947) ("In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process;

the doctrine furnishes criteria for choice between them.");
*American Dredging Co. v. Miller*, 510 US 443, 453, 114 S Ct
981, 127 L Ed 2d 285 (1994) ("At bottom, the doctrine of
*forum non conveniens* is nothing more or less than a super-
vening venue provision, permitting displacement of the ordi-
nary rules of venue when, in light of certain conditions, the
trial court thinks that jurisdiction ought to be declined."). A
court that dismisses an action under the inconvenient-forum
doctrine does so under its inherent power to decline to exer-
cise its jurisdiction to try a case in favor of an alternative
forum based on considerations of convenience and justice.

The purpose underlying the inconvenient-forum
doctrine

> "is to root out cases in which the 'open door' of broad juris-
> diction and venue laws 'may admit those who seek not sim-
> ply justice but perhaps justice blended with some harass-
> ment,' and particularly cases in which a plaintiff resorts 'to
> a strategy of forcing the trial at a most inconvenient place
> for an adversary.'"

*Carijano v. Occidental Petroleum Corp.*, 643 F3d 1216, 1224
(9th Cir 2011), *reh'g en banc den*, 686 F3d 1027 (2012), *cert
den*, ___ US ___, 133 S Ct 1996 (2013) (quoting *Gulf Oil*, 330
US at 507). It is a doctrine that is reserved for the rare case
that exhibits extraordinary circumstances favoring dis-
missal, and "not a 'doctrine that compels plaintiffs to choose
the optimal forum for their claim.'" *Id.* (quoting *Dole Food
Co. v. Watts*, 303 F3d 1104, 1118 (9th Cir 2002)).

Plaintiffs' primary argument supporting its asser-
tion that the inconvenient-forum doctrine is not available
in Oregon is that Oregon courts do not have discretion *to
decline* to exercise jurisdiction over a case, once jurisdiction
is properly established. For their argument, plaintiffs rely
almost exclusively on the 1928 case of *State ex rel. Kahn v.
Tazwell*, 125 Or 528, 266 P 238 (1928), *overruled in part by
Reeves v. Chem Industrial Co.*, 262 Or 95, 495 P2d 729 (1972).
That case, however, is not helpful to plaintiffs' position.

In *Kahn*, the plaintiff, a citizen of Germany, had
obtained an insurance policy in Germany from a company with
an international insurance business. The representatives of

the insurance company had signed the contract in New York and France. The plaintiff sued the insurance company on the contract in Oregon and served the complaint on the company's appointed attorney-in-fact in Oregon, which the company was required to appoint to do business in Oregon under the insurance statutes. 125 Or at 531-32. The insurance contract also contained a provision that provided that, "[f]or the fulfillment of this contract[,] only the courts of Karlsruhe[, Germany,] are competent." *Id.* at 532. The trial court granted the insurance company's motion to quash service for lack of personal jurisdiction. The Oregon Supreme Court concluded that service upon the insurance company's attorney-in-fact in Oregon was sufficient to obtain personal jurisdiction of the company and subject matter jurisdiction of the action, and that the contract's forum-selection clause was void as contrary to public policy because the parties could not, by contract or stipulation, diminish the jurisdiction of Oregon courts. *Id.* at 542-43.[2]

Plaintiffs emphasize a statement by the *Kahn* court that "[s]ome courts, however, decline to take jurisdiction of a suit against a foreign corporation on a cause of action arising out of the state, especially where plaintiff is a nonresident," *id.* at 541, and argue that, because the court did not follow that minority view, the court necessarily rejected the idea that a court has inherent power to decline jurisdiction. However, plaintiffs' argument ignores the context of the court's observation, which was within a discussion about whether personal jurisdiction *could be obtained* over a corporation on a transitory action in any state where the corporation is doing business, and comparing the majority and minority view of courts on *that* question. *Kahn* solely addressed whether the trial court had personal and subject matter jurisdiction based on the service made on the company's Oregon agent under the insurance statutes, and in light of the contract clause attempting to place jurisdiction solely

---

[2] The Oregon Supreme Court later replaced the *per se* rule of law announced in *Kahn*—that all contract forum-selection clauses are void as against public policy—with the modern rule that forum-selection clauses are valid and enforceable. *Reeves*, 262 Or at 101. However, *Reeves* did not overrule the disposition in *Kahn* because the court concluded that it would "probably hold today" that the contract clause at issue in *Kahn* was unfair and unreasonable and, thus, unenforceable. *Id.*

in the courts of Karlsruhe, Germany.[3] Because it concluded that the trial court had both personal and subject matter jurisdiction of the case, the court issued a writ to the trial court to take that jurisdiction: "We are constrained to hold upon the weight and authority and reason that the Circuit Court has jurisdiction of the defendant * * * and of the subject of the action, and should entertain such jurisdiction and proceed with the hearing and determination of the action mentioned." *Id.* at 545. *Kahn* does not stand for the proposition that plaintiffs attribute to it.[4]

---

[3] In their reply brief, plaintiffs change their argument and attempt to rely on a different discussion in *Kahn* as a rejection of the inherent power of courts to decline jurisdiction, and also make a lengthy new argument based upon principles of comity. In doing so, plaintiffs rely largely on out-of-context quotes taken from the appellate briefs filed in *Kahn* by the defendant judge and the insurance company. We have reviewed those briefs, and the parties in that case did not raise in them any issue about declining jurisdiction based on "convenience." More importantly, we will not place any discussions or holdings into the Supreme Court's opinion that the court did not place in the opinion itself. As noted above, the court's opinion *solely* addressed issues of jurisdiction; it did not address whether a court may decline its established jurisdiction. We also decline to address plaintiffs' comity theory, which they presented for the first time in their reply brief. *See, e.g., Clinical Research Institute v. Kemper Ins. Co.*, 191 Or App 595, 608-09, 84 P3d 147 (2004).

[4] Plaintiffs also point to Article I, section 10, of the Oregon Constitution to support their argument that Oregon courts cannot decline jurisdiction over a case. Article I, section 10, provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

Plaintiffs argue that justice cannot be administered "openly" or "completely," as provided in that clause, "if judicial discretion can be invoked to bar access to Oregon's judicial process." The Oregon Supreme Court has explained that "[t]he open courts clause of the Oregon Constitution * * * protects both a litigant's access to court to obtain legal redress and the right of members of the public to scrutinize the court's administration of justice by seeing and hearing the courts in operation." *Doe v. Corp. of Presiding Bishop*, 352 Or 77, 93, 280 P3d 377 (2012). However, we find nothing on the face of Article I, section 10, that suggests that it prohibits a trial court from dismissing a case based upon the inconvenient-forum doctrine, which first requires the availability of another adequate forum, *see Novich*, 172 Or App at 252-53, and plaintiffs do not develop a reasoned argument explaining their position. *Amicus curiae* Oregon Trial Lawyers Association likewise cites Article I, section 10, but does not develop an argument based upon it. Accordingly, we decline to further address the merits of plaintiffs' contention based on Article I, section 10. *See, e.g., Smith v. Dept. of Corrections*, 219 Or App 192, 198-99, 182 P3d 250 (2008), *rev den*, 345 Or 690, *cert den*, 557 US 923 (2009) (declining to address the merits of undeveloped constitutional claims).

Indeed, as early as 1913—15 years before *Kahn* was decided—the Oregon Supreme Court had recognized the inherent power of courts to decline to exercise jurisdiction over cases that involved the internal affairs of foreign corporations. *Beard v. Beard*, 66 Or 512, 517, 133 P 797, *reh'g den*, 134 P 1196 (1913), *overruled on other grounds by Mack Trucks, Inc. v. Taylor*, 227 Or 376, 362 P2d 364 (1961). The purpose of the rule was "the protection of the foreign corporation." *Id.* at 518. Although not an expression of the inconvenient-forum doctrine, the doctrine discussed in *Beard* was a generally accepted rule in both state and federal courts that provided, in part, the basis for the United States Supreme Court to adopt the more general federal *forum non conveniens* doctrine in 1947. *See Koster*, 330 US at 528 (quoting from *Rogers v. Guaranty Trust Co. of New York*, 288 US 123, 53 S Ct 295, 77 L Ed 652 (1933), which discussed when a court should decline jurisdiction of stockholder suits involving the internal affairs of a foreign corporation). We and the Oregon Supreme Court also have recognized the inherent power of Oregon courts to decline their jurisdiction in other circumstances, including based on an enforceable forum-selection clause in a contract, *Reeves v. Chem Industrial Co.*, 262 Or 95, 100-01, 495 P2d 729 (1972), considerations of comity, *Kotera v. Daioh Int'l U.S.A. Corp.*, 179 Or App 253, 274, 40 P3d 506 (2002), or the existence of a more appropriate remedy to a declaratory relief claim, *League of Oregon Cities v. State of Oregon*, 334 Or 645, 652, 56 P3d 892 (2002). Accordingly, we reject plaintiffs' argument that an Oregon court cannot decline in an appropriate case to exercise its jurisdiction.

Turning to the more specific issue, in 1940, the Oregon Supreme Court appeared to touch upon the inconvenient-forum doctrine in *Horner v. Pleasant Creek Mining Corp.*, 165 Or 683, 107 P2d 985 (1940), *reh'g den*, 109 P2d 1044 (1941). In that case, the plaintiff, a minority stockholder, brought a suit against a mining corporation and the majority stockholders for fraudulent conspiracy to deprive him of money advanced to the corporation and to render his interest in the corporation valueless. The trial court entered a decree for the plaintiff and placed the corporation in receivership; the Supreme Court reversed,

concluding that the record did not establish fraud or conspiracy. *Id.* at 699-703. After so concluding, the court then stated:

"The question is presented herein as to the propriety of an Oregon court assuming jurisdiction of this cause instituted by a resident of Washington against a Washington corporation and individual defendants who are all residents of Washington. We think that the action of the learned trial court in that particular would not be ground for reversal. No good purpose can be served by discussing the law upon that phase of the case further than to say that the assumption of jurisdiction in such a case as this is a matter within the sound judicial discretion of the trial court; and when such discretion has not been abused, the action of the trial court does not afford ground for reversal."

*Id.* at 703-04. Later, in a concurrence in *State ex rel Academy Press v. Beckett*, 282 Or 701, 722 n 3, 581 P2d 496 (1978) (Linde, J., concurring), Justice Linde cited to the above paragraph and noted, "It is not clearly established whether Oregon courts have similar discretion [to dismiss under *forum non conveniens*], although *Horner* * * * seems to hold that they do."

Based on *Horner* and *Academy Press*, Evergreen asserts that the Oregon Supreme Court in *Horner* confirmed the availability of the inconvenient-forum doctrine in Oregon. Plaintiffs dismiss *Horner* as mere *dictum* without confronting the case. Although we have, in passing, characterized the court's statement in *Horner* as *dictum, see Novich*, 172 Or App at 251 n 4, Evergreen correctly points out that that was likely an improper characterization. In concluding that the trial court did not abuse its discretion in exercising its jurisdiction over the case, the *Horner* court resolved an assignment of error of a preliminary procedural matter that the court necessarily had to resolve to reach the merits of the plaintiff's fraud and conspiracy claims. We also note, however, that *Horner* was a stockholder suit involving the internal affairs of a Washington corporation, which, as discussed at 266 Or App at 38, was an already established basis for an Oregon court to decline its jurisdiction, *see Beard*, 66 Or at 517. Thus, it is not clear if *Horner* speaks to the precise issue before us. Nonetheless, the court in *Horner*

did, at a minimum, recognize that the doctrine in *Beard*—
an important precursor to the adoption of federal *forum non
conveniens*—remained good law in Oregon, even if it did not
provide a basis for reversal in that case.

Since *Horner*, we and the Oregon Supreme Court
have on several occasions discussed or noted the existence
of the inconvenient-forum doctrine without formally adopt-
ing it as available in Oregon. *See State ex rel Hydraulic
Servocontrols v. Dale*, 294 Or 381, 390 n 5, 657 P2d 211
(1982) (noting that "Hydraulic's objection may pose a *forum
non conveniens* problem when the accident occurred else-
where, *** but it is not dispositive of the personal juris-
diction issue in this case"); *Academy Press*, 282 Or at 722
n 3 (Linde, J., concurring); *Reeves*, 262 Or at 100 ("But a
court is not always required to exercise such jurisdiction as
it may possess. Courts often refuse to hear a case because of
[f]*orum non conveniens* considerations."); *Berger v. Stephan*,
241 Or App 399, 412, 250 P3d 954 (2011) (summarily reject-
ing the defendants' contention that Oregon was an inconve-
nient forum because it was premised on an incorrect asser-
tion about the basis for the plaintiffs' claim); *Maricich*, 204
Or App at 66 (reversing trial court dismissal for *forum non
conveniens* because the court failed to first determine that
it had jurisdiction); *Black v. Arizala*, 182 Or App 16, 38 n 8,
48 P3d 843 (2002), *aff'd*, 337 Or 250, 95 P3d 1109 (2004)
(Armstrong, J., concurring) (noting that "our *forum non con-
veniens* cases show" that the court can create adequate judi-
cial procedures when there is not an adequate statutory pro-
cedure); *Kotera*, 179 Or App at 274 ("Similarly, the relative
convenience of the courts of different nations plays a part
in the comity determination, but the fact that the inconve-
nient[-]forum doctrine might be applicable in a particular
case does not preclude application of the doctrine of comity
to that same case."); *Novich*, 172 Or App at 251-52 (assum-
ing, without deciding, that the inconvenient-forum doctrine
is available and reversing the trial court's dismissal because
it failed to identify an adequate alternative forum); *C.O.W.
Inc. v. M.V.D.*, 37 Or App 73, 75 n 2, 586 P2d 107, *rev den*,
(1978) ("While a court having jurisdiction may decline to
exercise it on the basis of [f]*orum non conveniens* ***, absent
jurisdiction, the issue cannot be reached.").

Plaintiffs have not convinced us that the inconvenient-forum doctrine is not available to Oregon courts as part of those courts' already recognized inherent power to decline jurisdiction in appropriate cases. Indeed, at least a variant of the doctrine had been employed by Oregon trial courts and approved by the Oregon Supreme Court since 1913—the date that *Beard* was decided. In addition, the Oregon Supreme Court has signaled the availability of the doctrine and has expressly approved a court's authority to decline jurisdiction through enforcement of a forum-selection clause in a contract, *Reeves*, 262 Or at 96-101, which "is close in concept to *forum non conveniens*," *Black*, 182 Or App at 38 (Armstrong, J., concurring). Oregon appel-. late courts having implicitly affirmed the exercise of discretion by trial courts to decline jurisdiction based on the inconvenient-forum doctrine, we now take this opportunity to confirm that authority explicitly. In doing so, we decline plaintiffs' invitation to leave the decision to the legislature, which has not spoken on the matter.[5] *See Weldon v. Bd. of Lic. Pro. Counselors and Therapists*, 353 Or 85, 100, 293 P3d 1023 (2012) (stating that the court is reluctant to infer from the legislature's silence an intention to deprive courts of inherent authority to address procedural matters). As amplified below, an Oregon trial court may, in the rare case, decline to exercise its jurisdiction to try a case, if to do so would "best serve the convenience of the parties and the ends of justice." *Koster*, 330 US at 527.

---

[5] Both plaintiffs and *amicus curiae* Oregon Trial Lawyers Association argue that the legislature has addressed the ability of an Oregon court to decline jurisdiction for convenience and approved of it in only two narrow circumstances—when transfer to another Oregon county would promote "the convenience of witnesses and the parties," ORS 14.110(1)(c), and when, in a child custody case, the court determines "that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum," ORS 109.761. Because the legislature has not adopted a more broadly applicable inconvenient-forum statute, plaintiffs and *amicus curiae* argue that the legislature has indicated its intention that no such broader doctrine be available to Oregon courts. We do not discern from the legislature's silence on the availability of dismissal for convenience factors in circumstances other than those identified in ORS 14.110 and ORS 109.761 an intention by the legislature to restrict the inherent power of courts to dismiss cases on convenience grounds, particularly where, as here, the parties have not identified any statutory language that could support such a result.

We also reject without discussion plaintiffs' related and undeveloped argument based on Article VII (Amended), section 2b, of the Oregon Constitution. *See, e.g., Smith*, 219 Or App at 198-99.

Having determined that the inconvenient-forum doctrine is available to an Oregon court, we turn to plaintiffs' second assignment of error, in which they contend that the trial court erred when it applied to this case the federal *forum non conveniens* factors outlined in *Gulf Oil* and *Piper*. Evergreen argues that plaintiffs' assignment is unpreserved or invited error that we should not address on appeal. Evergreen points out that plaintiffs did not argue below that a different standard from that articulated in *Gulf Oil* and *Piper* should be applied in deciding whether to dismiss a case under the inconvenient-forum doctrine, but instead argued, based on the federal factors, that plaintiffs' cases should not be dismissed. Although Evergreen is correct on that point, we believe that the issue was sufficiently preserved for our review.

In the trial court, plaintiffs expressly framed their argument in terms of the federal factors because, they noted, no recognized Oregon standard exists. However, plaintiffs also argued for departures from *Piper* in their discussion of its application to this case. Specifically, plaintiffs argued that their choice of forum should not be given less deference due to their status as foreign plaintiffs; that Evergreen has a heavy burden to establish oppression and vexation out of proportion to plaintiffs' convenience; and that the trial court should not rely on public-interest factors to dismiss a case, but should focus, instead, on private-interest factors in determining convenience. Plaintiffs now make those same arguments on appeal as considerations that we should adopt in crafting an Oregon-specific inconvenient-forum doctrine. Accordingly, we conclude that plaintiffs sufficiently preserved those arguments for appeal.[6] In addition, we find it appropriate to discuss the factors that Oregon courts must

---

[6] Plaintiffs also argue that a trial court should be required to liberally construe all disputed facts in favor of retaining jurisdiction. Plaintiffs did not preserve that argument in the trial court. However, because this case necessitates our adoption of a standard for courts to utilize, we will briefly address its merits. Unlike personal jurisdiction, which a plaintiff must allege and prove (and from which plaintiffs take the "liberally construe" standard), here the burden is on defendant to demonstrate that an action should be dismissed based on convenience and justice. That standard already defers to a plaintiff's choice of forum and inherently weighs the inquiry in plaintiffs' favor. Thus, the additional protection of a plaintiff's interest to require a court to liberally construe disputed convenience-related facts in their favor is unnecessary in this context.

apply, now that we have announced for the first time that a dismissal based on the inconvenient-forum doctrine is available in Oregon.

Turning to those factors, we first emphasize the caution that an Oregon court must take before dismissing a case based on the inconvenient-forum doctrine. As well expressed by the Ninth Circuit Court of Appeals,

> "[t]he doctrine of *forum non conveniens* is a drastic exercise of the court's 'inherent power' because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case. \*\*\* Therefore, \*\*\* *forum non conveniens* [i]s 'an exceptional tool to be employed sparingly,' and not a 'doctrine that compels plaintiffs to choose the optimal forum for their claim.'"

*Carijano*, 643 F3d at 1224 (quoting *Dole Food Co.*, 303 F3d at 1118) (internal quotations omitted in *Carijano*). A defendant seeking dismissal based on the inconvenient-forum doctrine bears the burden of demonstrating, first, that an alternative forum is presently available and adequate, *Novich*, 172 Or App at 252, and, second, that considerations of convenience and justice so outweigh the plaintiffs' choice of forum that the action should be dismissed.

As to the first showing, whether an alternative forum is presently adequate, the defendant must demonstrate that "(1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy." *Carijano*, 643 F3d at 1225; *see also Novich*, 172 Or App at 252 (holding that an alternative forum is not adequate when the statute of limitation has run in that forum on plaintiffs' claims); *Piper*, 454 US at 254 n 22 ("[F]or example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute."). That is a determination that the trial court must make on a case-by-case basis.

Turning to considerations of convenience and justice, we agree generally that the private- and public-interest factors outlined in *Gulf Oil* are appropriate considerations for Oregon courts to apply. Although other considerations may be taken into account under the particular circumstances of a case, a court should look at all of the factors

outlined below and not focus unduly on only one or two factors, such as the relative location of witnesses and evidence in the two potential forums. The private-interest factors that a court may consider include

> "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [*sic*] of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial."

*Gulf Oil*, 330 US at 508. As to the public-interest factors, the court in *Gulf Oil* explained:

> "Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

*Id.* at 508-09. Although we agree that the public-interest factors should play some role in the trial court's consideration, in the typical case they will not be as important as the private-interest factors.

We again emphasize that, in weighing the private- and public-interest factors, the trial court must conclude that the defendant has demonstrated that the balance is strongly in favor of dismissal—a heavy burden that will likely require a showing that the plaintiffs' choice of forum is vexatious, harassing, or oppressive to the defendant "by inflicting upon [the defendant] expense or trouble not necessary to his own right to pursue his remedy." *Id.* at 508.

We also agree with the Ninth Circuit's observation that "[t]he mere fact that a case involves conduct or plaintiffs from overseas is not enough for dismissal." *Carijano*, 643 F3d at 1224 (citing *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F3d 1163, 1181-82 (9th Cir 2006) ("Juries routinely address subjects that are totally foreign to them, ranging from the foreign language of patent disputes to cases involving foreign companies, foreign cultures and foreign languages.")).

In adopting the factors outlined in *Gulf Oil*, we reject the discussion in *Piper* that a foreign plaintiff's choice of forum should be given less deference merely based on the plaintiff's status as a foreigner. It is a reasonable assumption that plaintiffs are in the best position to determine what is for them a convenient and appropriate forum in which to litigate their claims and that assumption becomes no less reasonable merely because plaintiffs are not residents of Oregon, nor citizens of the United States. *But cf. Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Co.*, 549 US 422, 430, 127 S Ct 1184, 167 L Ed 2d 15 (2007) ("When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'"). It is particularly appropriate to accord the plaintiff the same deference as a resident plaintiff when the choice of forum, such as in this case, is the home forum of the defendant and has a connection to the subject matter of the case. *See Carijano*, 643 F3d at 1229 ("Concerns about forum shopping, while appropriately considered in the *forum non conveniens* analysis, are muted in a case such as this where [p]laintiffs' chosen forum is both the defendant's home jurisdiction, and a forum with a strong connection to the subject matter of the case.").

With that legal background in place, we turn to the trial court's decision in this case. Because a motion to dismiss based on the inconvenient-forum doctrine may require the trial court to make findings of fact relevant to the inquiry, "[w]e review the trial court's factual findings to determine whether they are supported by any competent evidence, and, where the trial court failed to make express factual findings, we assume that the court found the relevant facts in

a manner consistent with its ultimate ruling." *Munson v. Valley Energy Investment Fund*, 264 Or App 679, 700-01, 333 P3d 1102 (2014) (internal quotation marks omitted) (describing standard of review of findings supporting a grant of a motion to dismiss for lack of personal jurisdiction). *But see id.* at 695 ("[W]hen considering a motion to dismiss for lack of subject matter jurisdiction, the trial court may decide disputed jurisdictional facts based on evidence submitted by the parties, but the court may not, at that stage, decide disputed facts that go to the merits of the underlying claim because to do so would deprive a party of its entitlement to a trial 'on disputed questions of material fact.'" (Quoting *Black*, 337 Or at 265.)).

We review the trial court's decision on a motion to dismiss based on an inconvenient forum for an abuse of discretion. *See Gulf Oil*, 330 US at 512 (decision to dismiss based on *forum non conveniens* is within sound discretion of trial court); *Horner*, 165 Or at 704 ("[T]he assumption of jurisdiction in such a case as this is a matter within the sound judicial discretion of the trial court; and when such discretion has not been abused, the action of the trial court does not afford ground for reversal.").

> "'Discretion' refers to the authority of a trial court to choose among several legally correct outcomes. * * * Where, however, a trial court's purported exercise of discretion flows from a mistaken legal premise, its decision does not fall within the range of legally correct choices and does not produce a permissible, legally correct outcome."

*State v. Romero (A138124)*, 236 Or App 640, 643-44, 237 P3d 894 (2010). In the context of the inconvenient-forum doctrine, a trial court abuses its discretion if it relies on an erroneous view of the law, relies on findings unsupported by the record, or strikes a clearly unreasonable balance of the relevant factors. *See Forsi v. Hildahl*, 194 Or App 648, 652, 96 P3d 852 (2004), *rev den*, 338 Or 124 (2005) ("The trial court abuses its discretion if it exercises that discretion in a manner that is unjustified by, and clearly against, reason and evidence."); *Carijano*, 643 F3d at 1224 ("In the *forum non conveniens* context, a 'district court may abuse its discretion by relying on an erroneous view of the law, by relying on a clearly erroneous assessment of the evidence,

or by striking an unreasonable balance of relevant factors.'" (Quoting *Ravelo Monegro v. Rosa*, 211 F3d 509, 511 (9th Cir 2000), *cert den*, 531 US 1112 (2001).)).

Under the first step · of the inconvenient-forum inquiry, the trial court concluded that Peru was an adequate, alternative forum:

> "Plaintiffs conceded in their briefing that Peru is an adequate alternative forum. At oral argument and in subsequent briefing they changed their position, arguing that the statute of limitations under Peruvian law ran on March 11, 2010, and therefore, Peru is not an adequate alternative forum. I find defendants' offer to waive the statute of limitations to be sufficient to address this concern."

Plaintiffs argue on appeal that Peru is not an adequate forum because the applicable Peruvian statute of limitation has expired, and Evergreen cannot make Peru an adequate forum by agreeing to waive enforcement of the limitation statute. Plaintiffs also now assert on appeal that Peru is an inadequate forum because of travel conditions for American counsel and "institutional corruption, discrimination against indigenous and poor people, and retaliation against plaintiffs who seek redress in Peru's legal system."

Except for the running of the Peruvian statute of limitation, plaintiffs did not preserve any of their claims below, having conceded that Peru was an adequate forum. None of the conditions that plaintiffs now argue make Peru inadequate are conditions that occurred after entry of the order by the trial court, and, thus, plaintiffs could have raised them below in responding to Evergreen's motion. Evergreen also provided sufficient evidence that Peru is an adequate forum for plaintiffs' claims by submitting an expert's affidavits about the remedies available to plaintiffs in Peru. *See also Carijano*, 643 F3d at 1226 (stating that "[t]o demonstrate that a foreign nation is an inadequate forum due to corruption, a party must make a 'powerful showing' that includes specific evidence" and concluding that Peru was an adequate forum for the plaintiffs' claims).

With regard to plaintiffs' statute of limitation argument, we agree with the trial court that Evergreen's agreement to waive the limitation statute is sufficient.

Evergreen's offer to waive the limitation statute was made in conjunction with the filing of its motions, and the trial court appropriately conditioned its judgment of dismissal on Evergreen following through on that offer and the courts in Peru accepting the waiver. Evergreen also provided the court with an expert affidavit stating that Peruvian courts would accept such a waiver. *Cf. Novich*, 172 Or App at 252-53 (holding alternative forum presently inadequate where statute of limitation had run, the defendant's offer to waive the statute of limitation was not made until oral argument on appeal, and the defendant had made no showing that a Mexican court would accept such a waiver). The trial court did not abuse its discretion in concluding that Peru offered a presently adequate, alternative forum for plaintiffs' claims.

Under the second step of the inconvenient-forum inquiry, the trial court considered the balance of private- and public-interest factors, presumably as outlined by the parties in their briefing, which was based on *Gulf Oil* and *Piper*. The trial court concluded that Peru was the more convenient forum based primarily on the trial court's assessment of which of plaintiffs' claims had more merit and the location of witnesses and evidence relative to that claim:

> "The next step in my analysis is the weighing of a number of private and public interest factors to determine whether trying the action in Peru would best serve the convenience of the parties and the ends of justice. The weighing of these factors depends in large part on how one views the dispute between the parties. *The materials submitted by the parties persuade me that trial of this lawsuit will largely center on, and depend upon, witnesses and documents regarding circumstances in Peru at the time of the crash, rather than circumstances in Oregon or the United States.* At oral argument, based on what counsel referred to as 'squawks,' plaintiffs suggested that with further discovery they may find evidence of a malfunction in the warning or altimeter systems installed by Evergreen in the United States. I decline to base my decision on such possibilities, especially given the record that is before me. Consequently, the private and public interest factors weigh in favor of dismissal, but conditioned on those concessions offered by Evergreen, including an effective waiver of the statute

of limitations, and cooperation by Evergreen in making available witnesses and documents located in the United States."

(Emphasis added.)

Plaintiffs argue on appeal that the trial court made an erroneous assessment of the evidence and struck a clearly unreasonable balance of factors because it relied on its conditional assessment (without the benefit of merits discovery) that plaintiffs direct-liability claim against Evergreen—negligent maintenance of the helicopter and its systems—would not be the focus of the litigation. Plaintiffs assert that it was too early in the litigation to determine whether the focus of trial would be on direct or vicarious liability, and the trial court improperly "disregarded the admission that only a handful of witnesses in Peru had any direct personal knowledge concerning the cause of the crash, and that most witnesses concerning [p]laintiffs' theory of the case for direct liability of [Evergreen] were in Oregon or the United States." (Footnotes omitted.)

Evergreen responds that the trial court correctly concluded that plaintiffs' direct-liability theory was speculative and unsupported by any evidence in the record. According to Evergreen, plaintiffs' proffered rule would result in a plaintiff being able to defeat an inconvenient-forum motion merely "by speculating that as yet undiscovered evidence might establish a stronger connection to the existing forum."

As a starting point for our discussion of the trial court's decision, we agree with the federal courts that a trial court should not merely focus on the number of witnesses in each location in assessing the convenience of a forum. "Instead, the court should * * * examine[] the materiality and importance of the anticipated witnesses' testimony and then determine[] their accessibility and convenience to the forum." *Gates Learjet Corp. v. Jensen*, 743 F2d 1325, 1335-36 (9th Cir 1984). The burden remains on the defendant seeking to dismiss to demonstrate the materiality and importance of the witnesses and documents that it claims make the plaintiff's chosen forum inconvenient. In so doing, the trial court should also be mindful that "'the increased speed

and ease of travel and communication * * * makes, especially when a key issue is the location of witnesses, no forum 'as inconvenient [today] as it was in 1947,' when the Supreme Court decided [*Gulf Oil*]." *Id.* (quoting *Manu International, S.A. v. Avon Products, Inc.*, 641 F2d 62, 65 (2d Cir 1981)) (alterations in *Gates Learjet*). That admonition is even more apt today than when it was made in 1981.

Here, the trial court attempted to assess the convenience of the respective forums based on what it believed the focus of the case would be—the circumstances in Peru at the time of the crash—and where the witnesses and documents relevant to that focus were located. However, in making that determination, the trial court appears to have completely disregarded plaintiffs' claims based on Evergreen's direct negligence as supported by witnesses and documents located in the United States. The trial court must assess the materiality of witnesses and evidence with respect to plaintiffs' well-pleaded allegations and determine, on the whole, whether Evergreen has met its heavy burden to obtain dismissal for an inconvenient forum. That is so because, in seeking to prove their case, plaintiffs will be relying on the same witnesses and documents regardless of the trial court's preliminary view of the merits of a particular allegation. A trial court must weigh the convenience and justice factors on a motion to dismiss for an inconvenient forum— which is necessarily brought at the beginning of a case—but in doing so it may not make factual determinations that go to the underlying merits of plaintiffs' claims. *Cf. Munson,* 264 Or App at 694-95 (in considering a motion to dismiss, a trial court's determination of facts relevant to that consideration "may not 'interfere with a party's right to a trial on disputed questions of material fact'" (quoting *Black*, 337 Or at 265)). Here, the trial court improperly disregarded the materiality of witnesses and evidence relevant to plaintiffs' direct-liability allegations in assessing the relative convenience of Oregon and Peru, because the court's task was to assess *where* that evidence would be located and its accessibility, not *what* that evidence might show once obtained.

The trial court also made no findings, implicit or explicit, about the availability of, or ease of access to, witnesses and documents located in Peru. A trial court cannot

merely look at the location of witnesses or evidence; it must assess the availability and ease of access to material witnesses and evidence to the litigants in Oregon, which requires taking into account factors such as whether compulsory process will be required to obtain material witnesses and the relative ease of obtaining evidence given modern advances in travel, communication, and electronic discovery. Here, the trial court appears to have concluded that Peru was the convenient forum based merely on witnesses and documents being located there, without assessing whether the location of that evidence created such a burden on Evergreen that the plaintiffs' choice of Oregon as a forum is vexatious, harassing, or oppressive "by inflicting upon [Evergreen] expense or trouble not necessary to [its] own right to pursue [its] remedy." *Gulf Oil*, 330 US at 508; *see also Carijano*, 643 F3d at 1224 ("The mere fact that a case involves conduct or plaintiffs from overseas is not enough for dismissal.").

Finally, we note that the trial court also did not discuss any other factors that we now conclude it was required to consider before dismissing plaintiffs' case, nor can we discern whether the trial court gave appropriate deference to plaintiffs' choice of forum. Because the trial court did not make sufficient findings for meaningful appellate review under the standards that we have announced today, we conclude that it is appropriate to vacate the trial court's dismissal order and the general judgment and remand this case to the trial court to reconsider its decision in light of this opinion.

Vacated and remanded.