■ Tate & Lyle Ingredients Americas, Inc., Plaintiff, v Whitefox Technologies USA, Inc., et al., Defendants/ Counterclaim Plaintiffs-Respondents. Tate & Lyle PLC, Additional Defendant on Counterclaim-Appellant. [949 NYS2d 375]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered April 22, 2011, which, insofar as appealed from, denied Tate & Lyle PLC's (Tate PLC) motion to dismiss all counterclaims as against it for lack of personal jurisdiction, unanimously affirmed, without costs.

The court properly denied the motion to dismiss. The general rule under New York law is that parent corporations may not enforce, or have enforced against them, terms of a contract, including forum selection clauses, signed by their separately existing subsidiaries (*see Freeford Ltd. v Pendleton*, 53 AD3d 32, 38 [2008], *lv denied* 12 NY3d 702 [2009]).

There are three sets of circumstances where a nonsignatory can enforce a forum selection clause. First, a third-party beneficiary of the contract may enforce a forum selection clause. Second, parties to an integrated, global transaction, who are not signatories to a specific agreement within the transaction, may nonetheless benefit from a forum selection clause in one of the other agreements (*id.* at 38-39). Neither the first or second circumstance are at issue in this case. As a third circumstance, *Freeford* states that "a nonparty that is 'closely related' to one of the signatories can *enforce* a forum selection clause" (*id.* at 39 [emphasis supplied]). We find this circumstance applicable here.

While there are many New York cases allowing a forum selec-

tion clause to be enforced by or against nonsignatory plaintiffs, Whitefox cites no case allowing enforcement against a nonsignatory defendant where that defendant is not an employee, successor or alter ego of the signatory. Nevertheless, the federal courts permit a forum selection clause to bind a nonsignatory defendant that has a sufficiently close relationship with the signatory *and* the dispute to which the forum selection clause applies (*see e.g. Hugel v Corporation of Lloyd's*, 999 F2d 206, 209 [1993]; *Manetti-Farrow, Inc. v Gucci Am., Inc.*, 858 F2d 509, 514 n 5 [9th Cir 1988] ["(w)e agree with the district court that the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants"]; *see also Universal Grading Serv. v eBay, Inc.*, 2009 WL 2029796, *16, 2009 US Dist LEXIS 49841, *58 [2009] ["(t)he same standard applies to the determination whether non-signatory defendants are bound by a forum selections clause as applies to non-signatory plaintiffs"]). Delaware *applies a similar test to evaluate whether a forum selection clause can be used to join a nonsignatory defendant into the action (*see e.g. Weygandt v Weco, LLC*, 2009 WL 1351808, *5, 2009 Del Ch LEXIS 87, *18-19 [2009] ["(s)everal cases suggest that when a control person agrees to a forum, it is foreseeable that the entities controlled by that person which are involved in the deal will also be bound to that forum"]). The rationale behind binding closely related entities to the forum selection clause is to "promote stable and dependable trade relations" (2009 WL 1351808, *5, 2009 Del Ch LEXIS 87, *19 [internal quotation marks omitted]). "[I]t would be inconsistent with that policy to allow the entities through which one of the parties chooses to act to escape the forum selection clause" (*id.*).

An important consideration in determining whether the nonsignatory is "closely related" to the signatory and the agreement from which the dispute arises is whether "the nonparty's enforcement of the forum selection clause is foreseeable by virtue of the relationship between the nonparty and the party sought to be bound" (*Freeford Ltd. v Pendleton*, 53 AD3d at 40; *see also Dogmoch Intl. Corp. v Dresdner Bank*, 304 AD2d 396, 397 [2003]).

There is no dispute as to the corporate identities and relationships of the parties to this action. There is also no dispute that the only connection to New York is the choice of law and forum selection clause in the contract signed by plaintiff and defendant. The record amply demonstrates that additional counterclaim defendant Tate PLC, plaintiff's parent company, was "closely related" to Tate & Lyle Ingredients Americas, Inc.

(Tate USA), its wholly-owned subsidiary and a signatory to the licensing agreement, as well as to the dispute itself such that it was "reasonably foreseeable" that it would be bound by the forum selection clause (*see Indosuez Intl. Fin. v National Reserve Bank*, 304 AD2d 429 [2003]; *see also Hugel v Corporation of Lloyd's*, 999 F2d at 209; *International Private Satellite Partners, L.P. v Lucky Cat Ltd.*, 975 F Supp 483, 485-486 [1997]).

Defendant sufficiently established that Tate PLC's involvement with Tate USA in many phases of the licensing agreement and the dispute arising from it, was such that the forum selection clause was properly asserted against it. At his deposition, the then chief executive officer of Tate PLC, Iain Ferguson, unequivocally stated that he made the decision to institute the present litigation, despite the fact that Tate USA was the named plaintiff. He also made the board of directors of Tate PLC aware of this decision, which obviously concurred. Additionally, Mr. Ferguson testified he made the decision not to return defendant's technology when it demanded its return and it was also his decision to continue to use that technology at a Tate USA plant in order to meet "our obligations as Tate & Lyle would always do." While acknowledging that he did receive input from technical experts, Mr. Ferguson again unequivocally stated that the decision "would be ultimately made by me."

It is clear from Ferguson's deposition that the entities not only consulted with each other, but both were intimately involved in the decision-making process from the inception of the licensing agreement through this litigation. Indeed, it is undisputed that Tate USA could not sign the licensing agreement on its own authority; it needed approval from Tate PLC. Moreover, Tate USA was directed by Tate PLC to commence the action against defendant. It continued to use defendant's technology and equipment at the direction of Tate PLC. These undisputed facts demonstrate that Tate PLC's involvement in this matter was far more than a parent company's mere approval of a contract. After making all the critical decisions for its subsidiary in this matter from the signing of the contract to the commencement of litigation, Tate PLC cannot seriously argue that it was not reasonably foreseeable that the forum selection clause in the contract it approved, would not be asserted against it.

We have considered Tate & Lyle PLC's remaining contentions and find them unavailing. Concur—Gonzalez, P.J., Sweeny, Moskowitz, Renwick and Richter, JJ.