Argued and submitted September 2, 2020, vacated and remanded
February 9, 2022

PHILLIPS SISSON INDUSTRIES, INC.
and Clint Phillips,
*Plaintiffs-Respondents,*

*v.*

Tim HYSELL,
*Defendant-Appellant.*

Marion County Circuit Court
17CV55408

PHILLIPS-SISSON INDUSTRIES, INC.,
an Oregon corporation, and
Clint Phillips, an individual,
*Plaintiffs,*

*v.*

PSI ACQUISITION, LLC,
an Oregon limited liability company,
*Defendant.*

Marion County Circuit Court
09C12068;

A169634

506 P3d 1139

Defendant appeals from a judgment in favor of plaintiffs, Clint Phillips and Phillips-Sisson Industries, Inc., that was entered following a bench trial. Among other arguments, defendant assigns error to the trial court's entry of "judgment against [defendant] personally on the theory that [certain] note payments [to defendant] were unlawful distributions under ORS 63.229." *Held*: The trial court erred by entering judgment for plaintiffs based on its conclusion that the challenged note payments were unlawful distributions under ORS 63.229. The note payments were not distributions as defined under the Oregon Limited Liability Company Act, and the trial court erred in instructing itself on that law. The court's error was not harmless.

Vacated and remanded.

J. Channing Bennett, Judge.

Sara Kobak argued the cause for appellant. Also on the briefs were Thomas Payne and Schwabe, Williamson & Wyatt, P.C.

Ben C. Fetherston, Jr., argued the cause for respondents. Also on the brief was Fetherston Edmonds, LLP.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Vacated and remanded.

**SHORR, J.**

Defendant Tim Hysell (defendant) appeals from a judgment in favor of plaintiffs Clint Phillips and Phillips-Sisson Industries, Inc. (Phillips-Sisson). That judgment was entered after the trial court ruled in favor of plaintiffs following a bench trial. Defendant assigns error to the trial court's denial of defendant's "motion for a directed verdict"[1] and the court's decision to enter "judgment against [defendant] personally on the theory that [certain] note payments [to defendant] were unlawful distributions under ORS 63.229." We agree with defendant's latter contention. The trial court erred by entering judgment for plaintiffs based on its conclusion that the challenged note payments were unlawful distributions under ORS 63.229. As we discuss, the note payments were not distributions as defined under the Oregon Limited Liability Company Act (LLC Act), and the trial court erred in instructing itself on that law. Defendant has not adequately developed an argument, however, that the trial court had to direct a verdict for defendant on plaintiffs' claims. As we explain, we vacate and remand to the trial court for further proceedings.

THE SUBSTANTIVE FACTS
UNDERLYING THIS APPEAL

The material facts necessary to resolve this appeal are undisputed. We recount only those facts necessary to understand the trial court's ruling and our decision. The background to this dispute is both involved and complex, involving a number of different loans, transactions, and entities. However, we need only discuss the key transactions that underlie this dispute.

PSI Acquisitions, LLC (PSIA) was an Oregon limited liability company with two members, defendant and Dan Sisson. Defendant owned approximately 90 percent of the membership units and was the managing member. Dan Sisson owned the remaining minority interest.

---

[1] "In a bench trial, a defendant's motion for directed verdict is better understood as an ORCP 54 B(2) motion for involuntary dismissal on the ground that upon the facts and the law the plaintiff has shown no ground for relief." *Oregon Psychiatric Partners v. Henry*, 293 Or App 471, 473 n 2, 429 P3d 399 (2018) (internal quotation marks omitted).

PSIA was originally formed to take over the sales and operations of plaintiff Phillips-Sisson, which was owned by plaintiff Clint Phillips and Dan Sisson. In 2006, PSIA purchased the assets of Phillips-Sisson, which had manufactured and sold traffic lights and related traffic control products. PSIA purchased the assets for both cash and a $600,000 promissory note payable to Phillips-Sisson. From the start, PSIA failed to make payments on the promissory note. In 2009, plaintiffs Phillips-Sisson and Clint Phillips sued PSIA on the note. Plaintiffs obtained a stipulated judgment for $600,000 against PSIA, with plaintiffs appearing as judgment creditors and PSIA as the judgment debtor. Plaintiffs, however, later agreed to forbear on collection of that judgment pending the occurrence of certain events and payments. The forbearance agreement gave plaintiffs a security interest in a large number of publicly traded shares in a company called Blue Earth, Inc. The value of those shares dropped precipitously in 2015 and 2016, and they ultimately became worthless at some point in 2016.

During its operations, PSIA also borrowed money from commercial banks and individuals. At issue in this lawsuit are two loans made in 2007 and 2008. In those years, defendant and his wife Robin Hysell loaned $180,000 and $104,911, respectively, to PSIA and received promissory notes in return.

By January 2016, PSIA was insolvent and its liabilities were greater than the value of its assets. Nevertheless, in February and April 2016, while PSIA was insolvent and despite the fact that plaintiffs had still not recovered on their judgment against PSIA, defendant caused PSIA to pay $250,000 and $5,000, respectively, to himself to pay down PSIA's outstanding promissory notes to himself and his wife. Defendant and Dan Sisson, the two members of the LLC, approved all repayments to the LLC's creditors.

## THE PROCEDURAL FACTS
## AND THE TRIAL COURT'S RULING

Plaintiffs filed the lawsuit underlying this appeal in December 2017. Plaintiffs' operative complaint alleged one claim for relief stating two counts, one labeled as a creditor's

bill and the other, relatedly, for fraudulent transfer.[2] The matter was tried to the court in a bench trial. During defense counsel's opening statement, the trial court, *sua sponte*, raised the possibility that, by approving the repayment of PSIA's debts to himself and his wife, defendant had approved an improper distribution under ORS 63.229. As to that point, plaintiffs had not raised ORS 63.229 as part of its claim and no party had mentioned the issue. Defense counsel contended to the trial court that, although he was only familiar and not "current" with the statute, he understood that a "distribution" under the LLC Act was an ownership distribution or reimbursement of an ownership interest and not a repayment of a debt that was owed to the owner. Defense counsel also asked to submit supplemental briefing on the issue.

After plaintiffs rested their case, the court again returned to the application of ORS 63.229 to the facts. Plaintiffs asked to incorporate that theory into their pleadings to conform their complaint to the evidence. Defendant, again, maintained that PSIA's repayment to defendant and his wife for an established company debt was not a distribution as that term was defined in ORS 63.001(6) and repeated his request to submit supplemental briefing. The court preliminarily concluded that distribution was defined much more broadly and that anything out of the corporation—whether money, property, or debt repayment— was a distribution. As a result, the court initially concluded that defendant "made a transaction that is in violation of [ORS] 63.229." The court, however, provided the parties an opportunity to file supplemental briefing on the issue. Further, at the close of the trial, the court appeared to find that defendant had not acted in bad faith or with a fraudulent purpose in approving the debt repayments, but also concluded that defendant's good faith was

> "not an issue. It doesn't bear on my decision either way. I mean, maybe it would bear if I felt that you had cheated your creditors and it was done for a purpose to defraud them. Then there's other remedies. But that's just not present in the evidence."

---

[2] Plaintiffs also denominated a second claim for relief as "PIERCING; PERSONAL LIABILITY," in which they sought to hold defendant personally responsible for any company liability owed by PSIA. (Uppercase in original.)

The court also stated that the analysis that the court must undertake under ORS 63.229 "supplements or supplants" the analysis under the case law, including in analyzing plaintiffs' claim against defendant for a creditor's bill and fraudulent transfer.

After defendant submitted supplemental briefing on the issue of the application of ORS 63.229, the trial court ruled in accordance with its earlier inclination that the LLC's repayment of defendant's and his wife's loan was an unlawful distribution. The court entered a general judgment against defendant personally for $255,000 plus statutory interest after concluding that defendant had "engaged in a prohibited and thus fraudulent transfer of assets."

## LEGAL ANALYSIS

Defendant appeals from that general judgment, arguing that the trial court erred by denying defendant's "motion for a directed verdict and by entering judgment against [defendant] personally on the theory that the note payments were unlawful distributions under ORS 63.229."[3] Defendant repeats the essential argument that he made in the trial court, namely that his approval of PSIA's repayment of his and his wife's loans were not "distributions" as that term is defined in the LLC Act. Plaintiffs, for their part, do not grapple with the LLC Act, engage in any statutory analysis, or defend the statutory basis for the trial court's ruling. Rather, plaintiffs contend that the trial court was correct in ruling for plaintiffs because defendant had breached his fiduciary duty, as defined by case law, in preferring payments to himself over other plaintiffs and other creditors. That contention restates the original bases for plaintiffs' claim, which did not rely on a theory of an unlawful distribution under the LLC Act.

We start with a brief analysis of the nature of defendant's first assignment of error. As noted, defendant

---

[3] In a second assignment of error, defendant contends that the trial court erred in allowing plaintiffs to proceed on a new theory under ORS 63.229 when that theory had not been pleaded prior to trial and the trial court introduced it without notice. Because we agree with defendant on the bulk of his argument under his first assignment of error, we do not need to reach the second assignment of error.

first contends that the trial court erred both in denying his "motion for a directed verdict and by entering judgment against [defendant] personally on the theory that the note payments were unlawful distributions under ORS 63.229." As to defendant's argument that the trial court erred in denying his directed-verdict motion, defendant does not develop a legal argument in support of that contention and we, therefore, decline to address it. *Bazzaz v. Howe*, 262 Or App 519, 529, 325 P3d 775, *rev den*, 356 Or 397 (2014).

Defendant's first assignment, however, also contends that the trial court erred by entering judgment against defendant personally on the theory that, by approving the loan repayments to himself and his wife, he had caused PSIA to make unlawful distributions under ORS 63.229. As to that aspect of his assignment, defendant may not precisely classify the nature of the assignment, but he does identify it and fully develops an argument in support of it. That is, we understand defendant to contend that the trial court applied the wrong legal standard in ruling for plaintiffs in this bench trial. As we have stated,

> "[i]n a bench trial, an argument that the trial court applied an incorrect legal standard is akin to an assertion that a trial court delivered an incorrect jury instruction; accordingly, we review to determine whether the court instructed itself incorrectly as to the law, and, if so, whether the erroneous self-instruction was harmless."

*State ex rel Rosenblum v. Living Essentials, LLC*, 313 Or App 176, 184, 497 P3d 730, *rev allowed*, 368 Or 787 (2021) (internal quotation marks omitted).

We begin with the first question on review, whether the trial court incorrectly instructed itself on the law when it concluded that PSIA's repayment of the outstanding notes to defendant and his wife were unlawful distributions under ORS 63.229. That raises a legal issue of statutory construction to which we apply our customary rules of construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We first examine the text within the context of the statute, and then, as we determine necessary, we examine any legislative history that we consider helpful to the analysis, and,

finally, if the legislature's intent is still not clear, we may resort to general maxims of statutory construction. *Id*.

As we discuss below, we conclude that the text and context are clear that a repayment of a note, at least one that is not repaid in relation to a percentage of a member's interest in the LLC, is not a "distribution" as that term is specifically defined in the LLC Act. The parties have presented no legislative history to us, and we have also found none that is helpful to the analysis.

Therefore, we start and end with the text in the context of the statute. The trial court concluded that the LLC's payment on the notes was unlawful under ORS 63.229. That statute provides:

"(1)   A distribution may be made by a limited liability company to any member only if, after giving effect to the distribution, in the judgment of the members, for a member-managed limited liability company, or the managers, for a manager-managed limited liability company:

"(a)   The limited liability company would be able to pay its debts as they become due in the ordinary course of business; and

"(b)   The fair value of the total assets of the limited liability company would at least equal the sum of:

"(A)   Its total liabilities; plus

"(B)   Unless the articles of organization permit otherwise, the amount that would be needed, if the limited liability company were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution, if any, of other members that are superior to the rights of the members receiving the distribution.

"(2)   The members or managers of a limited liability company may base a determination that a distribution is not prohibited under subsection (1) of this section either on:

"(a)   Financial statements that the members or managers reasonably believe have been prepared on the basis of accounting practices and principles that are reasonable in the circumstances; or

"(b)  A fair valuation or other method that the members or managers reasonably believe is reasonable in the circumstances.

"(3)  For purposes of this section, the amount, if any, by which a liability as to which the recourse of creditors is limited to specific property of the limited liability company exceeds the fair value of such specific property shall be disregarded as a liability of the limited liability company.

"(4)  The effect of a distribution under subsection (1) of this section is measured for purposes of this section:

"(a)  In the case of distribution by purchase, retirement or other acquisition of all or a portion of a member's interest in the limited liability company, as of the earlier of the date the money or other property is transferred or debt incurred by the limited liability company or the date the member ceases to be a member with respect to the membership interest purchased, retired or otherwise acquired;

"(b)  In the case of any other distribution of indebtedness, as of the date the indebtedness is distributed; and

"(c)  In all other cases, as of the date a distribution is authorized if the payment occurs within 120 days after the date of authorization or the date the payment is made if it occurs more than 120 days after the date of authorization.

"(5)  A limited liability company's indebtedness to a member incurred by reason of a distribution made in accordance with this section is at parity with the limited liability company's indebtedness to its general unsecured creditors, unless the member agrees to subordination or the limited liability company grants the member a security interest or other lien against limited liability company assets to secure the indebtedness."

ORS 63.229. We make a few broad observations that, so far, are consistent with the trial court's observations about the statute. The statute limits distributions from an LLC to its members and provides that distributions may occur "only if, after giving effect to the distribution, in the judgment" of the members (in a member-managed LLC) or the managers (in a manager-managed LLC), the LLC meets an insolvency test that is more specifically defined in ORS 63.229(1)(a)

and (b).[4] The statute also limits what the members or managers may use to determine that a distribution is not prohibited, such that the members or managers may rely on certain financial statements, which the members or managers reasonably believe were prepared "on the basis of accounting practices and principles that are reasonable in the circumstances," or on a "fair valuation or other method that the members or managers reasonably believe is reasonable in the circumstances." ORS 63.229(2). It is also clear from ORS 63.229(5) that some forms of debt transactions with a member may involve a distribution.

Not all debt repayments, however, are distributions under the statute. The LLC Act specifically and narrowly defines the term "distribution." ORS 63.001(6) provides:

> "'Distribution' means a direct or indirect transfer of money or other property, except of a limited liability company's own interests, or a limited liability company's incurrence of indebtedness to or for the benefit of the limited liability company's members *in respect of a member's interests*, whether in the form of a declaration or payment of profits, a purchase, retirement or other acquisition of interests, a distribution of indebtedness, or otherwise."

(Emphasis added.)[5] We conclude that the limiting phrase "in respect of a member's interests" qualifies each of the prior forms of payment that are listed, which include transfers of money and transfers of property, excepting a transfer of the LLC's own interests, or the incurrence of indebtedness to or for the benefit of the LLC's members. We have recognized that the doctrine of the last antecedent does not always apply:

> "'When several words are followed by a clause which is applicable as much to the first and other words as to the

---

[4] A member or manager may have personal liability to the LLC for approving a distribution that violates ORS 63.229, or, in some circumstances, for receiving a distribution that violates ORS 63.229 if the conditions set forth in ORS 63.225 are otherwise met. ORS 63.235(1), (2). We do not need to consider that statute because, as we discuss, we conclude that there was no evidence presented in the trial court that there was a distribution under ORS 63.229.

[5] The subsections of ORS 63.001 that are discussed in this opinion have been amended since the events at issue in this case. *See* Or Laws 2017, ch 705, § 18; Or Laws 2009, ch 14, § 3. However, those amendments are not relevant to our analysis, and, as a result, we cite to the current version throughout this opinion.

last, the natural construction of the language demands that the clause be read as applicable to all.'"

*Price v. Lotlikar*, 285 Or App 692, 703, 397 P3d 54 (2017) (quoting *Porto Rico Ry. Co. v. Mor.*, 253 US 345, 348, 40 S Ct 516, 64 L Ed 944 (1920)). ORS 63.001(6) sets forth a list of different types of payments that can be distributions, whether in the form of money, property, or debt, but the natural construction of the text provides that each type of payment is subject to the qualifying phrase "in respect of a member's interests."

We turn to the question of what is meant by the limiting phrase "in respect of a member's interests." We understand that phrase to mean the same as "with respect to" or "in relation to" a member's interests in the LLC. *See Webster's Third New Int'l Dictionary* 1934 (unabridged ed 2002) (defining the prepositional phrase "in respect of" to include "as to : as regards : insofar as concerns : with respect to" and defining "respect" to include "a relation or reference to a particular thing or situation"). A "[m]embership interest" is further defined as

"a member's collective rights in a limited liability company, including the member's share of profits and losses of the limited liability company, the right to receive distributions of the limited liability company's assets and any right to vote or participate in management."

ORS 63.001(23). *See also* ORS 63.001(21) (defining a member as a person who holds "an ownership interest in a limited liability company" and has the rights and obligations specified under ORS chapter 63). As a whole, we understand the phrase "in respect of a member's interests" to mean with respect to or in relation to that *member's ownership interest and corresponding rights in and obligations to the LLC*.

Thus, it is possible that an LLC makes a "distribution" when it discharges some or all of its indebtedness for the benefit of a member if such a payment is tied to a member's membership interest. An LLC also may make a distribution as defined in ORS 63.001(6) if it pays off debts to its members in relation to percentages that are tied to its members' ownership interests according to the operating agreement with respect to the member's rights, or if it makes a payment on

a loan in which the debt instrument conditioned the loan on obtaining or increasing, in some manner, a member's rights in the LLC. A payment of an outstanding note to a member that is not tied to the member's ownership interest, however, is not a distribution under the LLC Act. At least under ORS 63.229, our construction allows an insolvent LLC to repay a debt in full to its member for an outstanding note that is not tied to the member's ownership interest, but could limit some other debt repayments to a member if made in relation to a member's ownership interest.[6] Nevertheless, there is no other way for us to construe the statute while giving effect to the limiting phrase "in respect of a member's interests."

In sum, we conclude that the trial court erred when it instructed itself on the definition of a "distribution" under the LLC Act, because it concluded that any debt repayment can be a distribution under that law, rather than just those that are "in respect of a member's interest." Plaintiffs point us to no evidence presented in the trial court that the LLC's repayments of the note to defendant and his wife were "in respect of" defendant's membership interest in the LLC. The trial court's error was not harmless as it led directly to the court's conclusion that defendant had "engaged in a prohibited and thus fraudulent transfer of assets" for which he had personal liability.

We do not address the possibility that the repayment of the note to defendant and his wife could give rise to liability under plaintiffs' other theories. As noted, plaintiffs contend that defendant also violated a fiduciary duty to hold the company's assets as a "trust" fund for the benefit of the company's creditors, citing the duties owed by officers and directors of a corporation to its general creditors. *See Gantenbein v. Bowles et al.*, 103 Or 277, 289-90, 203 P 614 (1922) (stating that an officer or director of an insolvent corporation cannot use corporate assets "to prefer themselves as creditors or sureties in respect to past advances to the prejudice of general creditors"). We choose not to reach those issues because the trial court never reached them, having

---

[6] As we noted, the parties provided no legislative history and we found no helpful legislative history regarding the term "distribution" or the policy choices the legislature made relating to that term.

decided the issue solely under ORS 63.229, and did not make factual findings relating to the elements of those claims. *See Cumming v. Nipping*, 285 Or App 233, 242, 395 P3d 928 (2017) (remanding case to trial court where that court had applied the wrong legal standard and where it was unclear whether it had considered all of the correct legal elements or made factual findings as to those elements). Instead, we vacate the judgment and remand to the trial court for further proceedings so it may determine in the first instance the issues underlying plaintiffs' unresolved claims.

Vacated and remanded.