Argued and submitted September 28, general and supplemental judgments
reversed and remanded October 26, 2022

Jesse PETERS,
an individual, and
Kate Guptill, an individual,
*Plaintiffs-Appellants,*

*v.*

C21 INVESTMENTS, INC.,
a corporation incorporated under
the laws of British Columbia;
320204 US Holdings Corp., a Delaware corporation;
Phantom Brands LLC, an Oregon limited
liability company, dba Phantom Farms;
Swell Companies Limited, an Oregon corporation;
Robert Cheney, an individual;
Skyler Pinnick, an individual;
Eric Shoemaker, an individual;
Leonard Werden, an individual; and
Eco Firma Farms, LLC,
an Oregon limited liability company,
*Defendants-Respondents,*

*and*

Clinton HARRIS,
*Defendant.*

Clackamas County Circuit Court
19CV19273; A174918

520 P3d 920

In this civil action, plaintiffs Jesse Peters and Kate Guptill appeal from general and supplemental judgments for defendants after the trial court dismissed for lack of subject matter jurisdiction their amended complaint alleging tort claims for intentional interference with business relations and intentional interference with employment relations. Plaintiffs assign error to the trial court's ruling that a forum-selection clause in an agreement that plaintiffs had with a Canadian corporation for the sale of their business was enforceable by these defendants, who were not parties to the agreement containing the forum-selection clause. *Held*: The trial court erred. The Court of Appeals engaged in a construction of the text of the forum-selection provision and concluded that it applied only to claims relating to the subject matter of plaintiffs' agreement with the Canadian corporation and not to plaintiffs' tort claims against defendants. The court therefore reversed and remanded the general and supplemental judgments.

General and supplemental judgments reversed and remanded.

Douglas V. Van Dyk, Judge. (General Judgment)

Susie L. Norby, Judge. (Supplemental Judgment)

Matthew A. Goldberg argued the cause for appellants. Also on the opening brief were Allison C. Bizzano and Lotus Law Group, LLC. Also on the reply brief were Nicole C. Gossett-Roxbury and Lotus Law Group, LLC.

Julie A. Smith argued the cause for respondents. Also on the brief was Cosgrave Vergeer Kester LLP.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

General and supplemental judgments reversed and remanded.

**TOOKEY, P. J.**

In this civil action, plaintiffs Jesse Peters and Kate Guptill appeal from general and supplemental judgments for defendants after the trial court dismissed for lack of subject-matter jurisdiction their amended complaint alleging tort claims for intentional interference with business relations and intentional interference with employment relations.

As explained in more detail below, plaintiffs' claims arise out of a transaction in which plaintiffs agreed to sell their interests in Eco Firma Farms LLC (EFF), an Oregon-licensed recreational marijuana growing operation, to C21 Investments, Inc. (C21), a publicly traded Canadian corporation incorporated under the laws of the Province of British Columbia, through its United States subsidiary, 320204 US Holdings, Corp (USH), a Delaware corporation. The agreements memorializing the sale were subject to a share-purchase agreement (SPA) that included a forum-selection clause stating that the parties agreed that the courts of the Province of British Columbia were the "exclusive forum" for any litigation "in respect of the subject matter" of the agreement.

Plaintiffs' original complaint, filed in the Clackamas County Circuit Court, named as defendants the above entities as well as the current defendants—Phantom Brands LLC, d/b/a Phantom Farms, an Oregon limited liability company (Phantom), Phantom CEO Skyler Pinnick (Pinnick), Swell Companies Limited, an Oregon corporation (Swell), Swell CEO Eric Shoemaker (Shoemaker), Clinton Harris, an employee of EFF, and other individuals not pertinent to this appeal.

The trial court granted defendants' motion to make the original complaint more definite and certain and allowed plaintiffs to replead. Plaintiffs then filed an amended complaint, on which this appeal is based, naming only the current defendants—Oregon entities Phantom and Swell, and Oregon residents Shoemaker, Pinnick, and Harris—none of whom were parties to the SPA that includes the forum-selection clause.

Nonetheless, on the current defendants' motion, the trial court dismissed the complaint for lack of subject-matter

jurisdiction, based on the forum-selection clause. Plaintiffs appeal from the general judgment dismissing their claims and a supplemental judgment awarding attorney fees. We conclude that the trial court erred in dismissing plaintiffs' claims based on a lack of subject-matter jurisdiction and therefore reverse both judgments.

Whether a court has subject-matter jurisdiction over a particular proceeding is a question of law that we review for legal error. *State v. Hill*, 277 Or App 751, 763, 373 P3d 162, *rev den*, 360 Or 568 (2016). In reviewing the trial court's ruling granting defendants' motion to dismiss for lack of subject-matter jurisdiction under ORCP 21 A(1),[1] we draw our summary of the relevant facts from the pleadings and affidavits and assume the truth of all well-pleaded facts alleged in plaintiffs' amended complaint as supplemented by the record, construing the pleadings and affidavits liberally in favor of jurisdiction. *See O'Neil v. Martin*, 258 Or App 819, 828, 312 P3d 538 (2013) (in reviewing a trial court's grant of a motion to dismiss for lack of personal jurisdiction, we assume the truth of all well-pleaded allegations in the record and construe the pleadings liberally in support of jurisdiction).

In 2018, plaintiffs sold their shares in EFF to C21 through C21's United States subsidiary USH. The terms and conditions of the sale were first set forth in a "term sheet" and then memorialized in the SPA between plaintiffs, C21, and USH.

Under a separate agreement incorporated into the SPA, plaintiffs were to continue working for EFF after the sale, with Peters serving as "Director of Oregon Operations" and Guptill serving as EFF's chief executive officer.

The SPA further included a forum-selection clause that provided:

> "Each of the Parties hereto irrevocably attorns [(consents)] and submits to the exclusive jurisdiction of the courts of the Province of British Columbia in respect of the subject matter of this Agreement."

---

[1] ORCP 21 A has been renumbered, effective January 1, 2022. We cite to the version of the rule in existence at the time the trial court issued its decision in this case.

Plaintiffs alleged in their amended complaint that Peters's role with EFF was to include recruiting other Oregon cannabis businesses to join C21, and that a portion of his compensation would be based on that success. Plaintiffs alleged that Peters introduced C21 to other Oregon-licensed recreational marijuana growing operations, including defendants Phantom and Swell. Plaintiffs alleged that, shortly before and after C21's acquisition of EFF, defendants began to exclude plaintiffs from the Oregon operations as well as negotiations concerning C21's acquisition of Oregon entities, and to interfere with Peters's efforts to attract entities to C21. C21 removed Peters as manager of EFF, and replaced him with Shoemaker, who plaintiffs had initially introduced to C21.

Peters resigned from his position with EFF over disputes concerning compensation and plaintiffs' belief that they were being excluded from the business, and Guptill was fired from her position as CEO of EFF, allegedly as a result of defendants' interference. Plaintiffs then made a demand on C21 to pay plaintiffs wages they believed were owed under the various agreements. C21 rejected the demand, and plaintiffs brought this action.

As previously noted, plaintiffs' original complaint had named as defendants C21, USH, and EFF, defendants Phantom and Swell, defendants Harris, Pinnick, and Shoemaker, and other individuals not involved in this appeal. Those defendants moved to dismiss the complaint for lack of subject-matter jurisdiction, based on the forum-selection clause, or to make the complaint more definite and certain. The trial court granted the motion to make the complaint more definite and certain and allowed plaintiffs to replead.

Also as noted, plaintiffs' amended complaint names as defendants only Phantom, Swell, Pinnick, Shoemaker, and Clinton Harris. Those entities and individuals were not parties to the SPA and associated agreements between plaintiffs, C21, and EFF. For their first claim, plaintiffs allege that Phantom, Swell, Pinnick, and Shoemaker intentionally interfered with plaintiffs' economic relations with C21 and EFF:

"Phantom, Swell, Mr. Pinnick, and Mr. Shoemaker intentionally interfered with Plaintiffs' contracts, professional relationships, and business expectancies for the improper purposes of, among others (i) ousting Plaintiffs from their senior management roles within C21 and (ii) conspiring to ensure that the acquisition of EFF by C21 would turn into a colossal tragedy and failure for Plaintiffs.

"Phantom, Swell, Mr. Pinnick, and Mr. Shoemaker intentionally interfered with Plaintiffs' contracts, professional relationships, and business expectancies through improper means by: (i) repeatedly disparaging Peters behind his back within his professional network and within C21; (ii) working actively to exclude Peters from company and industry happenings to the greatest possible extent; (iii) misrepresenting to third-parties the true nature of C21's interest in Phantom and Swell; and (iv) knowingly violating OLCC regulations."

Based on the same underlying facts, for their second claim, plaintiffs allege that defendants Phantom, Swell, Pinnick, and Shoemaker interfered with plaintiffs' employment relationships with C21.

Defendants Phantom, Swell, Pinnick, and Shoemaker filed a new motion to dismiss under ORCP 21 A(1), for a lack of subject-matter jurisdiction, asserting that all of the claims depend on the existence of and arise "in respect of the subject matter" of plaintiffs' agreements with C21 and EFF and, thus, that the forum-selection clause of the SPA requires that the claims be brought in a court of the Province of British Columbia.

The trial court granted the motion to dismiss and entered a general judgment dismissing all defendants except Harris,[2] and subsequently awarded defendants their attorney fees in a supplemental judgment. Plaintiffs appeal from

_____

[2] Harris was a former employee of EFF. In their amended complaint, plaintiffs alleged that Harris "coerced Plaintiffs through economic duress to give him a 10% interest in [EFF] or risk seeing their economic prospects disintegrate before their eyes," and sought the recission of that agreement, the imposition of a constructive trust, and restitution. Harris made a motion to dismiss plaintiffs' claims against him based on the forum-selection provision, which the trial court denied. Harris and plaintiffs then entered into a stipulated judgment of dismissal without prejudice, and that judgment is not on appeal.

the general judgment and from the supplemental judgment awarding attorney fees.

Plaintiffs contend in their first and second assignments of error that the trial court erred in dismissing their claims against Phantom, Swell, Pinnick, and Shoemaker based on the forum-selection clause of the SPA and associated agreements between plaintiffs and C21, USH, and EFF. Plaintiffs contend that their claims do not fall within the forum-selection clause, because they are not contract claims based on the agreements and because Phantom, Swell, Pinnick, and Shoemaker were not parties to those agreements nor are they intended beneficiaries. Phantom, Swell, Pinnick, and Shoemaker respond that plaintiffs' claims fall within the forum-selection provision, because the alleged interference depends on the existence of plaintiffs' agreements with C21, USH, and EFF.[3]

The court's ruling relates to subject-matter jurisdiction. In Oregon, unless divested by statute or rule of law, "circuit courts have subject matter jurisdiction over all actions." *State v. Terry*, 333 Or 163, 186, 37 P3d 157 (2001) (citing Or Const, Art VII (Original), § 9 (stating that all jurisdiction not vested by law in another court shall be vested in circuit courts); Or Const, Art VII (Amended), § 2 (not changing jurisdictional scheme set out in original Article VII)). To divest the circuit courts of subject-matter jurisdiction, the legislature must do so expressly. *Specialty Risk Services v. Royal Indemnity Co.*, 213 Or App 620, 625, 164 P3d 300 (2007).

There is no question that the Clackamas County Circuit Court had subject-matter jurisdiction of the parties' litigation. The question is whether the court was nonetheless

---

[3] Defendants assert, as a preliminary matter, that the appeal should be dismissed because plaintiffs have failed to name C21, USH, and EFF as respondents on appeal, noting that, despite not naming them as defendants in the amended complaint, plaintiffs never sought to dismiss them from the case as permitted by ORCP 54 A(1) (providing that "a plaintiff may dismiss an action in its entirety or as to one or more defendants without order of court by filing a notice of dismissal with the court and serving the notice on all other parties not in default not less than 5 days prior to the day of trial if no counterclaim has been pleaded, or by filing a stipulation of dismissal signed by all adverse parties who have appeared in the action"). We reject the assertion, as it appears that the general judgment did in fact dismiss *all* defendants without prejudice, including C21, USH, and EFF.

required to relinquish its subject-matter jurisdiction because of the forum-selection clause of the SPA. The parties devote considerable briefing to the issue whether, as a matter of contract construction, the forum-selection clause of the SPA expresses the intention of the parties to the agreement that it can be enforced by a nonsignatory to the agreement. But we diverge from that issue preliminarily to consider a procedural issue not raised by the parties: whether an individual who is not a signatory to the agreement containing the forum-selection clause may bring an ORCP 21 motion to dismiss based on the forum-selection clause.

In *Reeves v. Chem Industrial Co.*, 262 Or 95, 101, 495 P2d 729 (1972), the Supreme Court had before it the question whether a forum-selection clause requiring that the parties' disputes be litigated in Ohio was valid and could provide a basis for dismissal of a claim brought in Oregon. The court reviewed the development of the case law around forum-selection clauses and concluded that, unless the court determined that a forum-selection clause establishing an exclusive forum for resolution of the parties' disputes was unfair or its enforcement was unreasonable, the provision would be enforced by dismissing an action filed in a forum not agreed to by the parties. The court quoted with approval from the *Restatement* that enforcement of a forum-selection provision would be unreasonable if "the forum chosen by the parties would be a seriously inconvenient one for the trial of the particular action." *Reeves*, 262 Or at 98 (quoting comment to 1 *Restatement*, *Conflict of Laws (Second)*, § 80). The court did not explicitly state in *Reeves* whether its ruling was based on subject-matter jurisdiction. Indeed, the court's concluding paragraph suggested that its ruling was not "jurisdictional."[4] Rather, the court explained, its decision

---

[4] The opinion's concluding paragraph states:

"It should be understood that we are not holding that such clause 'ousted' the Oregon court from jurisdiction. We are not deciding whether Oregon had jurisdiction under the long-arm statute. We are holding that if Oregon has jurisdiction the Oregon court nevertheless will dismiss the action because the contract clause agreeing upon the courts of Cleveland, Ohio, as the place for litigation over the contract is valid and should be enforced. This conclusion is reached because there is no evidence that the clause is unfair or enforcement would be unreasonable."

*Reeves*, 262 Or at 101.

was a matter of not exercising its jurisdiction *to give effect to the parties' enforceable agreement* that their disputes would be litigated in Ohio. *Id.* at 101. Thus, the court's emphasis was on the enforceability of the parties' agreement to litigate in Ohio.

In *Black v. Arizala*, 337 Or 250, 266, 95 P3d 1109 (2004), the court addressed the cognizability of a motion to dismiss under ORCP 21 A(1) for lack of subject-matter jurisdiction based on a venue agreement. The court found instructive to its interpretation of ORCP 21 A(1) the court's reasoning in *Reeves* that "the specific, *private law established by the parties' valid agreement* superseded the general jurisdiction of the Oregon courts over claims for breach of contract." *Black*, 337 Or at 264 (emphasis added). The court reasoned, based on *Reeves*, that "a conclusion of an Oregon court that *the parties' venue agreement* is valid and enforceable is a legal determination that requires the court to dismiss the action in response to a timely motion to dismiss for lack of jurisdiction over the subject matter." *Id.* (emphasis added). The court studied the legislative history of ORCP 21 A(1) and concluded that, although no statutory provision expressly provides for the dismissal of a complaint based on an agreement to litigate claims in a different venue,

> "ORCP 21 A(1) authorizes Oregon courts to dismiss an action for lack of jurisdiction over the subject matter when the motion is timely filed *and the record demonstrates that the parties have an enforceable agreement to litigate the action in a different venue.*"

*Id.* at 266 (emphasis added).

Thus, both *Reeves* and *Black* seem to emphasize as a prerequisite to the enforceability of a forum-selection clause an agreement *by the parties to the specific litigation* that their disputes would be litigated in a selected forum. The forum-selection clause of the SPA provides:

> "*Each of the Parties* hereto irrevocably attorns [(consents)] and submits to the exclusive jurisdiction of the courts of the Province of British Columbia in respect of the subject matter of this Agreement."

(Emphasis added.) Textually, it is the parties to the SPA who consented and agreed to the exclusive jurisdiction of the Province of British Columbia. Defendants were not parties to the SPA or the associated agreements; nor do they have a separate forum-selection agreement with plaintiffs.

We note that courts of other jurisdictions have held that, *in limited circumstances*, forum-selection provisions may be enforced by or against nonsignatories. *See, e.g.*, *Tate & Lyle Ingredients Ams., Inc. v. Whitefox Tech. USA, Inc.*, 98 AD 3d 401, 949 NYS 2d 375 (2012) (citing cases holding that a nonsignatory can enforce a forum-selection clause when its enforcement is "foreseeable by virtue of the relationship between them," and the nonsignatory has a "sufficiently close relationship with the signatory and the dispute to which the forum selection clause applied"); *Hugel v. Corporation of Lloyd's*, 999 F2d 206, 209 (7th Cir 1993); *Manetti-Farrow, Inc. v. Gucci Am. Inc.*, 858 F2d 509, 514 n 5 (9th Cir 1988) ("We agree with the district court that the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants."); *but see Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F3d 914, 924 (9th Cir 2011) ("The mere fact that the tortious interference claims would not have arisen 'but for' the existence of the Employment Agreements is insufficient to sweep those non-signatory claims into the ambit of the forum selection clause in a contract they did not sign."). Assuming that we were to adopt the view that certain circumstances might justify enforcement of a forum-selection clause by a nonsignatory to the agreement containing the clause, the record here is not sufficiently developed to determine whether the limited circumstances described in those cases exist here. Thus, were we to resolve the case on that basis, we would conclude that, under both *Black* and *Reeves*, defendants are not entitled to enforce the forum-selection provision, because they did not have an agreement with plaintiffs to pursue claims in the Province of British Columbia.

But we need not resolve that issue here, because we conclude that, even if the SPA forum-selection provision is enforceable by defendants as nonsignatories through a

motion to dismiss for lack of subject-matter jurisdiction, it would not apply to these particular claims by plaintiffs under the terms of the provision itself. Thus, we turn to the contract construction arguments discussed by the parties. The forum-selection provision of the SPA states that the parties to the agreement "submit[] to the exclusive jurisdiction of the courts of the Province of British Columbia *in respect of the subject matter of this Agreement*." (Emphasis added.) On appeal, in defense of the trial court's ruling, defendants contend that a claim is "in respect of the subject matter" of the agreements if agreements provide the underlying facts for the claims. Plaintiffs assert that the forum-selection clause only applies when the claims originate from the agreements, not when they arise from separate tortious conduct.

In *Black*, the court said that, when parties have agreed to litigate their dispute in a different forum, whether, as a textual matter, the forum-selection provision requires dismissal of the particular litigation is to be determined through a construction of the agreement. 337 Or at 267 ("The remaining question is whether the trial court correctly determined that parties' venue agreement required dismissal."). The forum-selection provision in *Black* stated that "venue for any legal action arising from this Agreement, including enforcement of any arbitration award, shall be in San Juan, Puerto Rico." The court explained in *Black* that the parties' intentions, as expressed in the provision, would determine whether particular litigation was subject to the forum-selection provision. The court turned to dictionary definitions to help in its determination whether the instant action was "arising from this Agreement":

> "The dictionary defines the verb 'arise' to include 'to originate from a specific source[,]' 'to come into being[,]' and 'to become operative[.]' *Webster's Third New Int'l Dictionary* 117 (unabridged ed 1993). The dictionary also explains that 'from' is 'used as a function word to indicate the source or original or moving force of something: as *** (4) the place of origin, source, or derivation of a material or immaterial thing[.]' *Id.* at 913. Applying those definitions, we conclude

> *that the parties' agreement must be the specific place of origin or the source of the legal action* to trigger application of the venue agreement."

*Black*, 337 Or at 267 (emphasis added; ellipsis and brackets in *Black*).[5]

As in *Black*, our analysis requires that we determine whether the parties to the SPA intended that the forum-selection clause would apply to plaintiffs' tort claims. The ordinary rules of contract construction apply in determining the applicability of the forum-selection clause. *Black*, 337 Or at 267. We first determine whether the parties intended the forum-selection clause to include the present controversy by examining the text and context of the provision. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997); *see also Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 313, 129 P3d 773, *rev den*, 341 Or 366 (2006) (noting that, to determine whether a provision is ambiguous, the trial court may consider the text in light of the circumstances underlying the formation of the contract). If the provision is unambiguous, we construe the words of the contract as a matter of law. *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995). If we concluded that the forum-selection clause applies, under *Reeves*, 262 Or at 98, we must then determine whether application of the provision would be unfair or unreasonable.

---

[5] Because the particular contract at issue in *Black* was subject to Delaware law, the court then referred to Delaware case law in determining whether the parties' contract was the "specific place of origin or the source" of the plaintiffs' claims. The court referred for guidance to *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A2d 149 (Del 2002), *cert den*, 538 US 1032, 155 L Ed 2d 1061, 123 S Ct 2076 (2003), in which the Delaware Supreme Court had considered the meaning of an agreement requiring arbitration of disputes "arising out of or in connection with this Agreement." The Delaware court held that the provision applied to actions *seeking to enforce the rights and duties that the parties' contract created*, not rights and duties created by sources of law external to the parties' contract. *Black*, 337 Or at 268. In *Black*, the court noted the noncontractual nature of the alleged improper acts that were the sources of the rights and duties that the plaintiffs' action sought to enforce. *Id.* at 270. The court explained its understanding of Delaware law that, although the plaintiffs' claims may have arisen from some or all the same facts that related to the parties' contractual transactions, because the sources of the claims were noncontractual, they did not arise out of the contract. *Id.* Thus, the court concluded, although the agreement could provide a source of information to the court in its analysis of the plaintiffs' claims, the claims were not subject to the forum-selection provision. *Id.*

Our first task, then, is to determine whether plaintiffs' claims are "in respect of the subject matter of" the SPA and associated agreements. The phrase "in respect of" is not defined in the SPA, so we give it its plain, natural, and ordinary meaning. *See Copeland Sand & Gravel v. Estate of Angeline Dillard*, 267 Or App 791, 796, 341 P3d 187 (2014), *adh'd to on recons*, 269 Or App 904, 346 P3d 526 (2015) ("words in a contract should be given their plain and ordinary meaning[,] and *** dictionary definitions are one source of that meaning"). Thus, as the court did in *Black*, we refer to the dictionary for guidance. *Webster's Third New Int'l Dictionary* 1934 (unabridged ed 2002) defines the phrase "in respect of" to include "as to : as regards : insofar as concerns : with respect to," and defines "respect" to include "a relation or reference to a particular thing or situation." *See also Phillips Sisson Industries, Inc. v. Hysell*, 317 Or App 440, 450, 506 P3d 1139 (2022) (citing definition). Thus, the forum-selection provision applies to claims "as to" or "as regards" or "with respect to" the specific subject matter of the SPA and associated agreements. The "subject matter" of the SPA and the associated agreements was the contractual agreement between plaintiffs and C21 for the sale of plaintiffs' shares in EFF and plaintiffs' continued employment with EFF. Thus, as we construe the forum-selection provision, it was unambiguously intended by the parties to those agreements to encompass disputes between them as to their specific contractual obligations for the sale of plaintiffs' shares in EFF to C21 and plaintiffs' agreement to work for EFF.

Although the SPA and associated agreements are tangential to and certainly provide background for plaintiffs' current tort claims against defendants, the claims themselves do not have as their bases the contractual obligations of the parties to those agreements; nor are the claims as to the contractual subject matter of the agreements—the sale of EFF and plaintiffs' employment. Rather, the claims concern defendants' alleged tortious *interference* with those agreements. Thus, we conclude that the claims themselves are not "in respect of the subject matter" of the agreements. Although the SPA and associated agreements could provide information to the court in its analysis of plaintiffs' tort claims, we conclude that they do not require that the

claims be brought in the courts of the Province of British Columbia.[6]

---

[6] Defendants contend that our opinion in *Livingston v. Metropolitan Pediatrics, LLC*, 234 Or App 137, 227 P3d 796 (2010), requires that we construe the SPA's forum-selection provision to be enforceable by defendants. In *Livingston*, the plaintiff brought claims of interference with economic relationships against the defendants, who were the plaintiff's coworkers and who then sought to enforce an arbitration clause contained in an employment contract between the plaintiff and the employer, to which they were not parties. The arbitration clause provided: "Any controversy, dispute or disagreement arising out of or relating to this Agreement, or the breach thereof, shall be resolved by arbitration." The plaintiff contended that, as nonsignatories to the employment contract, the defendants had no right to enforce the arbitration provision. We disagreed. *Id.* at 149. We noted the special rule of construction relating to arbitration clauses that requires that an arbitration clause will apply if it can plausibly be so construed. *Id.* at 147. We reasoned that the broad text of the arbitration clause could *plausibly* be construed to apply to claims against nonsignatories. In light of that requirement and in view of the presumption in favor of arbitration, we held that the clause applied to the plaintiff's claims:

> "[T]he plain text of the clause—in particular, the 'arising out of or relating to' language—does not limit its scope to controversies under the agreement or between plaintiff and [the employer]. Furthermore, the employment agreement provides the basis for and terms of plaintiff's employment. The text of the arbitration clause is reasonably susceptible to the interpretation that the parties intended it to apply to any claim that plaintiff might have arising out of or relating to his employment pursuant to the agreement.
>
> "We conclude that the wording of the clause is also broad enough to encompass claims against nonsignatories and to support the interpretation that the parties intended that [the employer's] employees and agents could avail themselves of its terms. Furthermore, the claims against the individual nonsignatory defendants (intentional interference with economic relations, intentional infliction of emotional distress, and blacklisting) depend on the same allegations made against [the employer] and have as their source the identical circumstances of plaintiff's claims against [the employer]— defendants' concerted response to plaintiff's conduct relating to the vaccine storage problem. We conclude, especially in light of the public policy favoring arbitrability, *see* [*Snow Mountain Pine, Ltd. v. Tecton Laminates Corp.*, 126 Or App 523, 869 P2d 369, *rev den*, 319 Or 36, 876 P2d 782 (1994)], that the arbitration clause plausibly encompasses not only claims between the parties to the agreement, but claims against the individual defendants that arise out of or relate to plaintiff's employment with [the employer]."

*Id.* at 150-51.

*Livingston* is thus distinguishable and is not precedent for the issue presented here. First, *Livingston* involved an arbitration clause and not a forum-selection clause. It did not involve a motion to dismiss under ORCP 21 A(1) for lack of subject-matter jurisdiction; the enforcement of an arbitration provision does not implicate the court's general subject-matter jurisdiction. Second, our conclusion in *Livingston* was required because of a special rule of construction for arbitration clauses that is not applicable here—whether the clause can *plausibly* be interpreted to require arbitration. *Id.* at 147. Finally, had *Livingston* involved a forum-selection provision rather than an arbitration clause, under *Reeves*, we would have been required to also determine whether application of the provision to the plaintiff's claims against the defendants would be unfair or unreasonable.

For that reason, the trial court erred in concluding that plaintiffs' claims must be dismissed because defendants are entitled to assert that they can only be sued in the courts of the Province of British Columbia.[7] We therefore reverse the general judgment. In light of our conclusion, we also reverse the supplemental judgment awarding attorney fees.

General and supplemental judgments reversed and remanded.

---

[7] In view of our conclusion that the forum-selection provision does not apply to plaintiffs' claims, we do not need to address whether application of the forum-selection clause would be unfair or unreasonable. *Reeves*, 262 Or at 100-01 (holding that a contractual clause agreeing on an exclusive forum will not be enforced if it is determined to be unfair or unreasonable).